WILLIAM LAKE, trustee, plaintiff in error, *vs.* JOHN H. HARDEE *et al.*, defendants in error.

57   459
102  181
57   459
114  561
57   459
123  336

1. Whilst the chancellor may direct the jury to find a special verdict in equity trials, and may direct their attention to particular points of inquiry by written questions, yet those questions should present the main issue clearly and fully to the jury, so that their verdict shall unmistakably speak the exact amount due from the defendant to the complainants.

2. If that amount be not set out in the finding of the jury so certainly that the decree may follow the verdict, and the two harmonize, the verdict must be set aside and a new trial must be granted.

3. Where the jury find two sums differing from each other in amount, in response to two of the questions, and it is doubtful whether they intended to charge the defendant with the aggregate of the two sums, or with only one of the two, and in that event, which of the two, the verdict is too uncertain for a valid decree to be entered upon it; and if the chancellor elect one of the sums found and decree accordingly, he becomes the tribunal to determine the amount of defendant's indebtedness, and not the jury, and the decree is improper; and this applies too, to the mode of counting interest, whether it shall be compounded or not, and hence what its sum shall be.

4. Where a bill states that the defendant was in possession of certain property of the complainants, as heirs-at-law of their grandfather, who died in South Carolina, and that he removed the property to Georgia, and recognized the relation of trustee in this state; and where on the trial the facts make a different case, and show that the complainants, by the will of their grandfather, took one-fourth of an estate left by him to their father, who died before the grandfather, and that by the statutes of South Carolina the legacy did not lapse, and that the defendant was the only qualified executor of the grandfather's estate, and had made a division thereof into four shares, three of which were turned over to the surviving children of the grandfather, the wife of defendant being one of them, and one retained to await the decision on a certain bill in equity filed by defendant, as executor, in Beaufort county, South Carolina, to ascertain, among other things, whether said legacy had lapsed by the death of the father of the complainants; and that the records were burnt during the war, and the original papers all destroyed, and the case in South Carolina not yet determined, and no effort had been made by the executor to prosecute the bill there, by the establishment of lost papers or otherwise; and where it further appeared that the executor had moved all the assets, which constituted the share of complainants, to Georgia, before the war, and had sold some of the slaves for good money and had hired out others, and had received and used the proceeds thereof, as well as the proceeds of their share of the lands and perishable property sold in South Carolina, and had repeatedly expressed the wish that the estate was settled up, but had wholly refused to account to complainants, who were minors when the proceedings in South Carolina were pending, and yet acknowledged and admitted the reception of the property and its removal to Georgia, and some indebtedness to complainants:

*Held*, that the bill should have been amended so as to charge the defendant as executor, and to set out the substantial facts as proven, before a recovery could be had thereon. The *allegata* and *probata* should, in some sort at least, conform to each other.

5. The facts proven make a strong case in favor of the complainants, and as the executor has moved the property to which these complainants were entitled, into this state, and converted and used it here, and has wholly failed to prosecute the bill he had filed in South Carolina, or institute any other proceedings to settle up the estate there, he is responsible to the courts of Georgia, and relief will be decreed against him here on the bill properly amended to conform to the facts.

6. If complainants, or any of them, had no guardian lawfully appointed before the year 1865 who could sue in their behalf, the right of action did not accrue to such of them prior to that year, and the limitation act of 1869 will not bar them.

7. If the executor had himself filed a bill against these complainants, which was pending in the courts of South Carolina until after 1865, to settle up this estate and account to these complainants for whatever should be de-

creed them, the right of action in Georgia did not accrue until after 1865, whether complainants were or were not of age, and the act of 1869 does not bar any of them.

8. If neither of the above statements be true, and the right of action did accrue before 1865, then these complainants are still not barred if this executor and trustee acted fraudulently and corruptly; but whether he so acted or not is a question for the jury, and those words in the act of 1869 mean more than mere illegal conduct; they mean moral turpitude and intentional fraud, to be passed upon by the jury from all the facts of the case.

9. It follows from the above that the decree was improperly entered upon this uncertain verdict, and the judgment sustaining it is erroneous, and must also be reversed.

Equity. Verdicts. Decrees. Practice in the Superior Court. Statute of limitations. Executors and administrators. Fraud. Before Judge TOMPKINS. Chatham Superior Court. May Term, 1875.

This cause being submitted to the jury, they found as follows:

"We, the jury, find that the property of Thomas Hardee, at his death, consisted of houses, negroes and other property, as alleged in the bill, the value of which was, at the time of the appraisement, February, 1859, $19,518 00. And the jury do find that William Lake did take possession of said property, and did receive and get possession of one-fourth of said estate at the division thereof. And the jury do find that the said William Lake has since taken possession of said one fourth of said estate, and, up to the filing of this bill, held possession of, and managed and controlled said property as trustee for the complainants. And we do further find that the said William Lake has failed and refused to account to complainants for their property, and unintentionally disregarded his duties as trustee. We do further find that said William Lake did, after possessing himself of the one-fourth part of the estate of Thomas Hardee as trustee for complainants, convert to his own use all of said property except the tract of land (one hundred and fifty acres,) bought from the estate of William Hardee by said Thomas Hardee, and did sell some of said property and convert the proceeds of the said sale to his own

use and thereby defrauded complainants, and that he has so fraudulently and corruptly managed said estate that he has never paid over to said complainants one cent of the principal or interest due to them from him as trustee.

"We cannot find that the said William Lake did apply any of the proceeds of the trust estate to the purchase of lot number thirty-eight, Warren Ward, in the city of Savannah. We find that some of complainants have demanded a settlement from said William Lake, of said trust estate, and that he has refused and failed to settle.

"We find that the said William Lake has declared that he wished the trust estate of complainants was settled up, but do not find that he said he had sold *all* of the real and personal property of said trust estate and used it for his own benefit, but intended to pay it back.

"We find that the estate of Thomas Hardee was in debt at the time of his death, one thousand four hundred and twenty-seven dollars and eighty-two cents, ($1,427 82,) exclusive of the bond held by Frank P. Hardee, and that the said William Lake has paid off debts to the amount of one thousand four hundred and twenty-seven dollars and eighty-two cents, ($1,427 82,) and realized from sales of estate of Thomas Hardee one thousand three hundred dollars, ($1,300 00.) We find that the amount of money (on the basis of gold) derived from the said trust property by the said William Lake when he took possession of it in South Carolina, in 1857, to the close of the war, by the custody, control and hire of the negroes so taken possession of by him at the time, to be three thousand eight hundred and sixty-eight dollars and forty cents, ($3,868 40,) with interest.

"We find that the negroes Kinkie and Nannie, died natural deaths; the negro Jackson was drowned. The negroes Center and Minter were freed by the United States government, their value being, when taken, one thousand four hundred dollars, ($1,400 00.)

"We find that part of the estate of Thomas Hardee assigned to complainants, on the 12th of February, 1859, was

of the value of four thousand five hundred and twenty-eight dollars and fifty cents, ($4,528 50.)   And that William Lake converted to his own use four thousand two hundred and ninety-nine dollars and forty cents, ($4,299 40,) of the same.

"THOMAS F. BUTLER, Foreman.

"Savannah, Georgia, May 29th, 1875."

Whereupon the chancellor rendered the following decree : " And it appearing that Mary Jane Hardee has died since the filing of the bill of complainants—a minor at the time of her death, and intestate—leaving the other complainants, except John H. Hardee and J. S. Guy, and Benjamin W. Hardee, her only heirs-at-law.   And it further appearing that said Benjamin W. Hardee is the brother of complainants, except John H. Hardee and J. S. Guy, and is entitled to one-sixth of the amount to be recovered out of William Lake, the defendant, but said Benjamin W. Hardee is not a party to the bill of complainants, and no decree can be made as to said one-sixth interest.   It is therefore adjudged, ordered and decreed that complainants do recover from William Lake, the defendant, the sum of three thousand five hundred and eighty-two dollars and eighty-three cents ($3,582 83,) being five-sixths of $4,299 40, the amount of complainants' trust estate which was fraudulently and corruptly converted by William Lake, the defendant, to his own use, together with interest on said $3,582 83, from the 12th day of February, 1859, until the 12th day of February, 1865, at the rate of seven per cent. per annum ; the interest up to February 12th, 1865, amounting to $1,504 79 ; and with interest from said 12th day of February, 1865, upon said principal and interest, the total being $5,087 62 at the rate of six per cent. per annum, annually compounded, until the day on which said defendant, William Lake, shall satisfy and pay off this decree.   This compounding of interest being allowed and decreed to complainants against the defendant by reason of the fraudulent and corrupt management of defendant with regard to complainants' trust estate, and the large amount of the hire and

profits of said trust estate received by defendant and converted to his own use.

" And it is further ordered and adjudged and decreed, that execution do issue against the property of defendant for the recovery of said principal and interest, and when collected, that one-fifth thereof be paid to John H. Hardee and Ann M., his wife, one-fifth to Jeremiah F. Hardee, one-fifth to Edwin B. Hardee, one-fifth to J. S. Guy and Margaret S., his wife, and the remaining fifth to Abraham Hardee. It is further ordered that all costs be paid by the defendant, William Lake.

" HENRY B. TOMPKINS,<br>" <i>Judge E. J. C. Ga., as Chancellor.</i>"

"June 25th, 1875.

For the remaining facts, see the opinion.

HARTRIDGE & CHISHOLM; R. E. LESTER, for plaintiff in error.

R. R. RICHARDS, for defendants.

JACKSON, Judge.

Thomas Hardee died in South Carolina possessed of an estate of lands and negro slaves, about the year 1857. Lake, who married one of his daughters, qualified as executor. The complainants were children of W. W. Hardee, son of the testator, and grand-children of the testator. W. W. Hardee died before his father. The estate was divided among the legatees, but the part allotted to W. W. Hardee was put in the executor's hands to see whether the legacy lapsed on account of W. W. Hardee's death before his father's, and to be held to answer to a bond given by W. W. Hardee, and indorsed by testator, if it was liable therefor. There was some dispute whether this division was temporary or permanent. Lake sold some lands which could not be equally divided, and before the war moved the share of complainants, in money and negroes, to Savannah, Georgia, where he lived. Before the war, and about its beginning, he sold some of the slaves be-

longing to this share of complainants' father, and about 1863 invested money in other slaves. It was in dispute whether he bought the latter for himself or for the share he thus held for complainants, in certain contingencies, but he obtained no order of any court either to sell or to buy. In 1858 or 1859 he filed a bill in South Carolina to fix the rights of the parties and to settle the estate, but it was suffered to drag along until Beaufort fell into the federal hands during the war, and the court-house was burned and the records destroyed. After the war he made no effort to prosecute the bill or establish papers, or to settle the estate, but frequently said that he wished it was settled up. He never paid complainants a cent, and made no returns. Whereupon, in 1875, they brought their bill against him, as trustee, in Chatham county, Georgia, alleging the foregoing facts, and that he had converted their property to his own use, and calling upon him for an account and settlement. Lake answered the bill, admitting substantially the relation of the parties to him and the fact of division—temporary, he said—the removal to Georgia of the share so allotted to complainants' father's part, the sale of negroes and re-investment in negroes, not for himself, but for this share, and that they perished on his hands as the result of the war, and set up that the estate of Thomas Hardee was small and their share small, and used up in expenses, etc. He also sets up the pendency of his bill to settle the estate in Beaufort, South Carolina, and the statute of limitations of 1869. The court submitted to the jury certain questions, to which they brought in answers, but found no specific sum due to complainants, taking their responses as a whole, one answer to one question seemingly making it one amount, and the other another sum, and not fixing the amount of interest or providing that it be compounded. They also found that he had *unintentionally* disregarded his duties as trustee, and yet in another response they found that he had acted fraudulently and corruptly ; and the court charged them that "if he had done anything in the management of the estate which he ought not to have done, or if he had left undone anything in his duty that he ought

to have done," this was tantamount to acting "fraudulently and corruptly," so as to take the case out of the statute of limitations of 1869; "that it was not necessary for the jury to find that he had acted intentionally wrong or with moral turpitude." A motion for a new trial and to arrest the judgment were both made on various grounds; but we shall consider them only in the motion for a new trial, as the case is thereby controlled. The court overruled both motions, and Lake excepted.

1. The decisions of this court, as well as the act of 1875, allow the practice of submitting questions to the jury by the chancellor, to which they may answer specifically; but those questions must elicit all the facts necessary to found the decree on the verdict, and unless material facts, such as the exact amount due, be found by the jury, no decree can be legitimately rendered upon the verdict. The judge, and not the jury, will decide facts, if any other rule be adopted; but, by our system, the jury, in equity cases, find the facts, and the judge applies the equitable principles thereto. Both together make our court of equity when facts are in dispute.

2. It follows that if the verdict and decree do not harmonize, the decree must be set aside and a new trial ordered, because the judge has found facts which the jury did not, and thus usurped their peculiar province: 46 *Georgia Reports,* 362.

3. In this case, it cannot be ascertained what amount the jury meant to charge Lake with and to find against him. In one answer, it is one thing; in another answer, it is another amount; and we really cannot say which should be followed. The chancellor rendered a decree in this case, not following either sum; he thus found the amount of defendant's indebtedness himself, and passed upon that great fact in the cause alone. So, too, he directed that the interest should be compounded at a certain rate and for a certain time; and this he put upon the ground of the frandulent and corrupt management of the estate by the defendant, a fact on which the jury did not pass intelligently, finding confusedly thereon, un-

Lake *vs.* Hardee *et al.*

der the charge of the court. We think the question of fraud and corruption one peculiarly within the province of the jury and to be passed upon by them; and if found by them, it would be, perhaps, right to allow them to find compound interest against any trustee acting corruptly. It will be observed, however, that our statute provides only for the case of trustees *appointed* in this state: Code, sec. 2603.

4. This party, Lake, was an executor appointed in South Carolina. He was sued here as trustee only. We think that the bill should be amended so as to charge him explicitly as executor, and set out that as the character of his trust. The facts make that case, and the *allegata* and *probata*. ought, in some degree, to correspond.

5. If the bill were thus properly amended, we are clear that the facts make a strong case against him here in this forum. He moved the property here, converted it here, is no no longer in South Carolina and cannot be sued there; he has failed to prosecute his bill there to settle this estate; he has instituted no other proceeding there to do so; he must be, therefore, held responsible here in our courts, and relief will be decreed against him as executor here: 13 *Georgia Reports,* 140; 56 *Ibid.*, 326. In so far as 34 *Georgia Reports,* 511, contravenes this principle, it will be found to be overruled in 56 *Georgia Reports,* 326, above cited; but in the case in 34 *Georgia Reports* it will be seen that no property was in this state, none had been wasted or converted here, and the administrator was on a mere visit here; resided in Alabama and was administering the estate there.

6. The limitation act of 1869 does not bar a minor; certainly not a minor with no guardian: 45 *Georgia Reports,* 478.

7. But even if these complainants were not all minors and did have guardians appointed here according to law—they residing here—yet if this executor had a bill pending against them in South Carolina to fix their equities and settle the estate with them, and this bill was undisposed of at the end of the war, they ought not to be barred by the act of 1869.

It appears that this suit has never been disposed of. The executor pleads it in this case as pending now; yet he takes no steps to prosecute it by establishing copies of the lost papers or burnt papers or otherwise. These complainants had the right to expect him to prosecute that bill which he brought himself, especially as he repeatedly told them that he wished the estate was settled up; and it would be hard indeed, if his own *laches* were imputed to them, and any limitation law be construed to bar them. We hold that this act does not bar their right to sue here, while they had any hope that he would proceed there; but as they waited patiently, without moving until 1875, and without his paying them a cent of what seems to be, by the verdict, their just demand upon him, we think that they are entitled to sue here and now.

8. But even if the right of action had accrued before 1865, so as to bar them, if the jury had found all the above facts against the complainants, still they would not be barred if Lake had acted fraudulently and corruptly. But upon this question the jury did not properly pass. The charge of the court took it from them. That charge made corruption mean any unintentional wrong act, or omission of any duty, by the executor, Lake. We do not so hold. We think those words mean more than mere constructive fraud. They mean actual fraud, actual, intentional wrong doing, willful and corrupt dealing, a purpose to impose upon his *cestui que trust,* and to benefit himself; and so we have, in effect, decided: 55 *Georgia Reports,* 15, and in the same case on the final hearing at the last term. We do not mean to say that the facts in this case do not show fraud and corruption in the sense of the act of 1869; we simply say that the jury must pass upon that issue, not the court; and that the court erred in not permitting the jury to pass upon the question of fraud in its true meaning in that act.

9. For the reasons that the decree does not follow the verdict; that the verdict is too uncertain to found a decree upon in the sum found against the executor, or rather trustee, as he is here charged, and that the jury have not been allowed

to pass upon, and have not, in effect or substance, found that the executor acted fraudulently and corruptly, and moreover, that the *allegata* and *probata* would more appropriately consist and harmonize with the bill so amended as to, conform to the facts in respect to the nature of this trust, that nature being now clearly ascertained, we reluctantly send the case back for a new trial.

Judgment reversed.