JAMES MCMANUS *et al.*, plaintiffs in error, *vs.* MATHEW COOK, defendant in error.

1. Only such questions need be put to the jury under the act authoriz-

ing special verdicts in equity cases, as will enable the jury fully to find the facts in issue and not admitted by the pleadings.

2. Where the vendors sold to the vendee a homestead in lands and took the vendee's notes therefor, and executed a bond for titles thereto to the vendee, and no part of the purchase money was paid in cash, and the vendors were insolvent:

*Held,* that equity will rescind the sale and cancel the notes upon payment by the vendee to the vendors of the value of the rents while he held the lands and the amount of damage, if any, done thereto—especially if the ordinary had never approved the sale.

3. On the trial of an equity case by special verdict upon written questions, the chancellor may decree a perpetual injunction, if the facts specially found demand it, without the finding by the jury in express words that a perpetual injunction be granted.

Practice in the Superior Court. Homestead. Vendor and purchaser. Equity. Injunction. Before Judge CRAWFORD. Talbot Superior Court. March Term, 1877.

Reported in the opinion.

WILLIS & WILLIS, for plaintiffs in error.

J. M. MATHEWS; J. H. MARTIN, for defendant.

JACKSON, Judge.

Mathew Cook filed a bill in equity against James McManus, to which Robert, his son, was afterwards made a party defendant, for the purpose of rescinding a trade in lands.

The bill alleged that James McManus and his wife, together with Robert McManus, had executed a bond for titles to Cook for the land, representing that he could make titles; and Cook had given his notes therefor; but that the bond could not be complied with because the land had been set apart to James McManus and family for a homestead, which could not be sold, and to which no title could be made; that the makers of the bond were insolvent, and could not respond in damages; that Cook went into possession, but hearing that it had been decided by the supreme court that the homestead could not be sold, he proposed to

McManus to cancel the trade, who refused, and Cook then abandoned the land, and now prayed that the trade be rescinded and the notes delivered up to be canceled, and certain suits brought by Robert McManus on some of the notes be enjoined. The bill was filed within a month after the trade was made.

The jury brought in a special verdict to the effect that Cook got possession of the land when he traded for it, abandoned possession in one month, without notice to McManus; that McManus resumed possession in January, 1876, and has been in possession ever since, Cook consenting and willing thereto; that Cook received no rent for 1875, but, in consequence of loss of rent for 1875, McManus has been damaged one hundred and twenty-five dollars. Whereupon the court decreed that the contract of sale be rescinded, that the promissory notes be given up and canceled, that the common law suits brought by Robert McManus be enjoined perpetually, that complainant pay the defendant one hundred and twenty-five dollars, and defendant pay costs. The defendants moved for a new trial on various grounds, the motion was overruled, and defendants excepted.

The answer of defendants admitted that the property had been set apart as a homestead, but insisted that good title could be made thereto, and the only facts deemed necessary to be decided as disputed between the parties, were found by the jury specially, in answer to questions propounded in writing.

1. And one ground for the new trial calls in question the ruling of the court, that all the questions necessary to be passed upon by the jury were submitted by written interrogatories, which were answered by the jury as above set out, the defendants contending that the question for the jury was only whether the trade was fair and McManus could make a good title.

No question of fact at all was made by complainant on the fairness of the trade, nor does defendant put in issue the fact of representations alleged. It is not denied that the

representations by McManus were made, that he could make good titles; but whether or not he could do so and carry out his bond or answer in damages, he being insolvent and the property being a homestead regularly set apart by the ordinary and the sale never approved by him, was a question of law arising under the admitted facts. Such being the case, the facts necessary to be ascertained were, how long Cook held the land, and what he had damaged it, or justly owed McManus for the rent thereof, and who was in possession after Cook left the place. To these points the inquiry of the jury was directed, and their verdict settled them.

2. The controlling question in the case is, whether equity will rescind the trade under the facts found or admitted, and whether the court did right to rescind it. In 55 *Ga.*, 383, this court held that the homestead set apart for the family could not be alienated, even with the approval of the ordinary, as a general rule ; that the allowing it to be done, especially without a provision for its re-investment, was in the teeth of the constitution, and void. It follows from this ruling that McManus could pass no title to this land to Cook ; that he could not comply with his obligation to do so ; that he and his son held Cook's notes, and two of them were sued ; and, whilst he may have intended no fraud, and probably did intend none when the trade was made, nevertheless, that its consummation would operate as a fraud upon Cook, who would get no title, and have no redress, as the other parties to the trade were insolvent. In effect, the case is the same as the representation that a vendor has title when he has none, though he may have thought he had it ; and in that view, the principle decided in 51 *Ga.*, 398, would cover and control this case. That was a bond for titles—a representation of ability to make title—no good title in the vendor, and insolvency of the vendor—and in that case relief was granted.

But the seventh section of the act of 15th of February, 1876, is invoked by the plaintiff in error, and he insists that,

under that section and act, a court of equity could confirm this sale and invest the proceeds thereof in another homestead. But, under the same section, a court of equity may cancel and set aside the sale, which the court here did. And it seems to us that the court reached the more just and equitable conclusion and granted the relief proper to be applied. The complainant was in possession only a short time; for that he is made to pay $125.00; he does not complain, and the defendant cannot, for it is in his favor. The defendant holds the land, the homestead for himself and family as set apart, and the complainant has his notes all canceled; so that both parties are placed *in statu quo*, except that complainant is made to pay $125.00—damage assessed by the jury for rent, which defendant lost by reason of the trade, or damage actually done by complainant to the land. This is about as fair an adjustment of the matters in difference as could well be made—certainly fair to the possessor of the homestead and his family.

It is true that Robert McManus had some of the notes, but his name is to the bond for titles, and he is in the trade. Besides, he signified, in his answer, a willingness to have the entire proceeds go to the purchase of another homestead for the family, and the only way in which he is not gratified is that the proceeds go to the securing of the old homestead—at least, the result is that the old homestead remains in the family. And, in addition to all this, if he gave anything for the notes, he knew all about the consideration of them and the trade, and is subject to all the equities of the case.

3. Some objection is made to the uncertainty of the decree, because it requires Cook to pay $125.00 to the defendant, and there are two defendants. We think it means James McManus, the father of the family, and the party entitled to rents and issues of the homestead for the benefit of the family. It was the law, we are aware, under the old equity practice, for the jury to authorize by their verdict, in express terms, a perpetual injunction; but we think that the special verdict act now dispenses with that necessity. If the

special facts found or admitted make a case for perpetual injunction, the chancellor—the court—the presiding judge—may decree it upon such facts, without words in the verdict saying, "we find that the defendants be perpetually enjoined."

Some errors are alleged in the charge and refusals to charge but they are immaterial, and however given, could not alter the verdict and decree, which are supported and required, by the evidence in the record.

Judgment affirmed.