COLUMBUS POWER CO. *v.* CITY MILLS CO., and *vice versa.*

1. The failure of a jury to whom a case is submitted upon special issues of fact to answer a question which is ab initio immaterial, or which, in view of another finding, becomes so, does not vitiate their verdict, when, taken as a whole, it is sufficiently comprehensive to support a judgment which properly disposes of the entire case.

2. Nor, in such a case, is the verdict rendered invalid by the submission to the jury of immaterial questions or the answering thereof.

3. In a case thus submitted, a particular finding of the jury will not be treated as inconsistent with another, when, construing both in the light of the pleadings, they are not necessarily repugnant. The findings in the present case which are alleged to be inconsistent with each other are not so when thus construed.

4. It was not, under the evidence in this case, impossible for the jury to answer correctly the main and controlling question submitted to them without first

arriving at what would have been correct answers to those questions which were not answered.

5. The evidence warranted the answer which the jury returned to this particular question, and the judgment entered in accord therewith was the necessary result.

Argued November 23, 1901.—Decided February 4, 1902.

Equitable petition. Before Judge Littlejohn. Muscogee superior court. July 19, 1901.

*W. A. Wimbish,* for plaintiff.

*Hatcher & Carson* and *J. H. Martin,* for defendant.

LUMPKIN, P. J. The Columbus Power Company brought against the City Mills Company an equitable action. For convenience we will hereinafter, when referring to the parties by name, call the plaintiff "the Power Company" and the defendant "the Mills Company." It was in the petition alleged that there was upon the property of the Mills Company a "natural head and fall of water," in the Chattahoochee river, of not exceeding five feet; that this company had constructed in the river a dam of greater height and also a power-house, and that by means of these structures it was maintaining a private nuisance and thus causing an unlawful back-flow of water upon the property of the plaintiff. There were in the petition prayers for an injunction and for damages. The answer, while denying most of the material allegations of the petition, did admit that the defendant was maintaining a back-flow of water on the property of the plaintiff, but distinctly set up that it had, by a prescription of more than twenty years continuance, the right to do so. At the trial the claim for damages was abandoned. The case was submitted to a jury upon special questions, and, after their findings thereon had been returned into court, a judgment in favor of the defendant was entered. The plaintiff made a motion for a new trial, which was overruled. It then sued out a bill of exceptions, and therein assigned error upon various rulings made while the case was in progress, and upon the denial of a new trial. We will now dispose of the questions thus presented for our determination, and in so doing state such additional facts as may be essential to an understanding of what we decide.

1, 2. The first two questions submitted to the jury were: "What is the natural head and fall on the property of the City Mills Company?" "What is the present head and fall on the property of the

City Mills Company under *existing conditions ?*" To each of these
the jury answered: "We do not know." Upon the return of the
verdict counsel for the Power Company moved that the case be re-
submitted to the jury and that they be required to distinctly an-
swer these questions, or that, because of their failure to so answer
them, a mistrial be declared.    The motion was overruled,·and error
is assigned thereon.    In addition to the questions, including the
above, which were prepared by counsel for the Power Company,
the court also submitted certain questions which were prepared by
counsel for the Mills Company, and these were answered favorably
to it.    This is assigned as error on the ground that the questions
last referred to were immaterial and not appropriate to the issues
involved.    We can not properly deal with these assignments of er-
ror without taking into consideration another fact of paramount im-
portance in this connection.    In answer to a question propounded
at the instance of the plaintiff, the jury found, upon evidence war-
ranting them in so doing, that the Mills Company and its prede-
cessors in title had "maintained an open, adverse, notorious, con-
tinuous, and exclusive back-flow of water upon the property of the
Columbus Power Company and its predecessors, to its present
height," for more than twenty years prior to the bringing of this ac-
tion.    It is therefore evident that, in view of this finding, it made
not a particle of difference what was the natural head and fall upon
the property of the Mills Company, or what head and fall it was
actually maintaining when the plaintiff's petition was filed; for if
the defendant had a prescriptive right to do the exact thing it was
then doing, the details sought to be elicited by the first two ques-
tions were immaterial.    The answers which the jury returned to
them were, of course, equivalent to no answers at all; but the an-
swer with respect to the prescriptive right of the Mills Company
was conclusive of the whole case, and sufficient, in and of itself, to
completely defeat the plaintiff's action.    See Civil Code, § 3590,
and cases there cited.    We may therefore treat as having been un-
answered the questions to which the jury replied: "We do not
know;" and it may be admitted that, but for the answer referred
to above, these two questions would have been of the utmost ma-
teriality.    For the sake of argument, it may be further conceded
that the questions submitted at the instance of the Mills Company
were open to the criticism made thereon, and it will still, we think,

be clear that there is nothing in all this calling for a reversal of the judgment of the court below.

The failure of a jury to whom an equity case is submitted upon special issues of fact to answer a question that is immaterial, whether so ab initio or made so by an answer to another question, can not result injuriously to the plaintiff; and this is equally true of the submission to them by the court of immaterial questions which they do answer. The two propositions embraced in the last sentence are certainly consistent with common sense, if not with law; but, as a rule, these things are in harmony. Suppose A. sued B. for services rendered in building a house, and, under the pleadings, they were at issue on all the points indicated by the first five of the following questions: (1) What price was A. to receive for building the house? (2) Did he build it according to contract? (3) If not, how much should be deducted for failure to do so? (4) Has he actually been paid the full amount of the contract price? (5) If not, what, if anything, is yet due him? (6) Is B., the defendant, a man of large or small means? Now if the case was submitted to a jury upon these six questions, it is obvious that a failure to answer the last would be a matter of no consequence whatever, it being immaterial ab initio. It is equally obvious that if they answered the fourth question " No," the other four questions should be distinctly answered. But suppose they answered that question " Yes," what possible difference would a failure to answer all the others make? Beyond doubt, if A. actually received all· that he was in any event to get, B. would be entitled to a judgment discharging him from liability, no matter what was the ·truth of the other controverted issues. This simple illustration seems to afford a satisfactory demonstration of the correctness of the first two headnotes, and they are in line with the previous decisions of this court. In *Lake* v. *Hardee*, 57 *Ga.* 466, it was held that the questions submitted " must elicit all the facts necessary to found the decree on the verdict." This case was also previously dealt with in 55 *Ga.* 667. In *Coleman* v.. *Slade & Etheridge*, 75 *Ga.* 61, it was ruled that when a case is tried on special issues, the judge should submit to the jury " such issues as will enable him to make a judgment or decree in the case from the verdict and pleadings and the undisputed facts; but he need not sift the jury or enter into particulars; nor need he submit issues requested by counsel, if he has already pro-

pounded questions which will draw the same substantial answers from the jury." When a verdict does not cover all the material issues so as to enable the court to decree thereon, it should be set aside. See, in addition to the two cases above cited, *Cobb* v. *Wise*, 71 *Ga.* 103; *Mayo* v. *Keaton*, 78 *Ga.* 126; and *Cooper* v. *Branch*, 86 *Ga.* 234. In the case last cited material questions were left unanswered, and the substantial issues in the case were not covered by the answers actually made. The verdict, therefore, was not sufficiently full to support a decree. In *Ruffin* v. *Paris*, 75 *Ga.* 653, it was held that a refusal to submit a particular question was not cause for a new trial when "the question submitted and its answer covered the issue which the defendant desired, so far as it was necessary to the making of a proper decree in the case." Manifestly, if the question refused had been submitted and not answered, the result would have been the same. The true rule deducible from all these cases and from the elementary principles of good practice is, that the verdict must with sufficient fullness and certainty cover the substantial issues in the case to enable the court to base upon it a proper judgment. Where a case turns upon one or more controlling issues, a verdict which thus covers the same meets all the requirements of the law. The real test is, not what questions are answered or remain unanswered; but what facts do the answers actually made establish, and are they comprehensive enough to warrant and support a judgment which rightfully disposes of the whole case?

3. One of the questions submitted to the jury was: "How much back-flow, if any, is caused by the dam and power-house of the City Mills Company upon the property of the Columbus Power Company?" To this the jury answered: "None." The plaintiff made in the court below the point, and insisted upon it here, that this finding vitiated the entire verdict, because it was inconsistent with the finding that the defendant had for more than twenty years caused a back-flow upon the property of the plaintiff, and in contradiction of the fact, admitted in the defendant's answer, that it had caused such a back-flow. We do not think this point is well taken. Whether or not a back-flow actually existed was really not an issue in controversy, either under the pleadings or the evidence. The jury could not possibly have failed to understand that this was so. Taking this into view, and looking to the form of the

question now under notice, their finding thereon must have been intended to express the idea that the dam and power-house together did not cause any back-flow, or, in other words, that the power-house did not contribute to causing the back-flow the existence of which was not denied. ˙Thus interpreting the answer "None" is, we think, but giving to the same, under the circumstances, its fair and reasonable meaning.

4. Another complaint of the verdict was that it was "inconsistent and insufficient to base a judgment or decree, for that under the pleadings and facts in the case the jury could not ascertain the extent of the present back-flow of water on the property of the plaintiff, nor that it had been maintained to its present height . . for more than twenty years, without first finding what was the natural head and fall on the property of the defendant and what was the head and fall under existing conditions," etc. This position is surely not maintainable. A jury could certainly find, upon sufficient evidence, that the water of a stream with a dam therein had, for a stated period, stood at a given mark on a stone situated upon a particular tract of land, without having the slightest knowledge of the existing head and fall in the stream upon the land of a lower proprietor, or of what that head and fall would be if the dam should be taken out. This proposition is, we think, sufficiently clear without elaboration.

5. The verdict was also excepted to as being contrary to evidence. As stated above, there was evidence warranting the finding that the defendant had a right by more than twenty years prescription to maintain the back-flow as it existed when the action was begun. Apparently, the evidence in support of the contention to the contrary was stronger and more satisfactory than that on which the jury based their conclusion; but the trial court approved of the same, and this, under rulings almost without number, is an end of the matter. With this conclusion thus established, the plaintiff's case was without foundation, and the judgment in favor of the defendant was the inevitable sequence.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*