25691.  METROPOLITAN LIFE INSURANCE COMPANY *v.*
MANUFACTURERS NATIONAL BANK.

DECIDED DECEMBER 4, 1936.

*Lovejoy & Mayer,* for plaintiff in error.

*Camp & Sanders, Hall & Jones,* contra.

JENKINS, P. J. The beneficiary in a contract for life insurance and total-disability benefits, issued under a "group plan," sued the insurer and recovered $3000, the full amount of the policy. The contract contained provisions as to permanent and total disability, and a requirement that the disease or injury prevent the insured from "engaging in any occupation and performing any work for wage or profit," similar to the provisions in the *Cato* and *South* cases, supra. The certificate of insurance was issued to the insured in May, 1931, while he was employed as the manager of an ice-plant at Newnan, Georgia. Under his corporate employer, he had long experience as an ice-plant manager and refrigeration engineer. In 1933, the employer transferred him to the management of its ice-plant at Knoxville, Tennessee. His salary was $275 a month. About January 24, 1934, while in this employment, he was stricken with lobar pneumonia, resulting in the formation of a large abscess about the size of a "goose egg" in one lung; and he was seriously ill at a hospital until about March 5, 1934. The evidence for the plaintiff showed that he remained away from any work, incapacitated and under the treatment of physicians, until April 13, 1934, when, upon his application to his former employer for work, the manager of its plant at LaGrange, Georgia, who was familiar with his condition, informed the officer in charge of the employer's southeastern territory that outside work would be better for the insured, and on April 16 he was given work at LaGrange, selling refrigerators, collecting, and doing small repair jobs, using a car for which the employer supplied gas and oil. He was paid $25 a week. His salary was paid until about October 11, 1934, when he was released. During the period of this employment, under the evidence for the plaintiff, he was obliged continually to lose time, and was in the hospital under treatment of doctors, or unable to leave his bed, for thirty or more days of the time. From May 1 to May 11 he spent in a hospital; between May 1 and July 18 he was ill, and was treated by a doctor on twenty-two different days; from May 26 to June 5 he was ill and confined at home; on June 17 he had three teeth

pulled, with an unfavorable reaction; June 18 he spent in a hospital; on September 4 he was ill and had to go to bed. After he was dropped from the pay-roll of his employer on October 11, he did no work of any kind. In November he was confined to his bed for about nine days, and remained ill. On December 7 he went to the home of his sister in Miami, Florida, and "continued to cough and spit up blood." On January 22, 1935, his sister took him to Columbus, Georgia. He "coughed all the way" to. that city. In February he was stricken with influenza, had lobar pneumonia, and died on February 8, 1935.

Able counsel for the insurer submit that the evidence is entirely insufficient to support a finding that the insured became permanently and totally disabled, within the construed meaning of the policy, while he was engaged in the employment of manager. In their brief they contend as follows: "While it may be true that upon direct examination, and in answer to hypothetical questions, some of the doctors testified that [the insured] was totally and permanently disabled [from January 24, 1934], yet on cross-examination, when they were advised that he had actually worked, they stated that if he actually worked he was not totally and permanently disabled." Dr. George W. Holcombe testified: "He had pneumonia to begin with, and then developed an abscess of the lung about the size of a goose egg. . . In my opinion [after stating facts appearing in his treatment of the insured during his first attack of pneumonia, and other facts stated hypothetically], I would say that I don't think he had recovered from the lung abscess which he had while under my care in Nashville. Assuming the same facts as above set out, in my opinion I would say that this man was not physically able to resume any occupation from March 5, 1934, until his death; and I would say, from the condition I saw him in in Nashville, in my opinion he really was not in condition to work that year at all, and if he had undertaken to work he probably would have died sooner." On cross-examination, he said: "I don't know how much he worked; but if he actually worked from April 13th to October 11th, 1934, with the exception of a couple of weeks, I would say he was incapacitated and should not have worked, and I would say that he was disabled to work. From my records and the condition he was in when I saw him, he should not have done any work in from three

to six months. What I am testifying to is that he should not have worked, and I don't mean to testify that he was totally and permanently disabled which prevented him from working." On redirect examination, he stated: "Assuming [hypothetically-stated facts under testimony of other witnesses], and knowing the condition he was in on March 5th, in my opinion, I would say he was totally and permanently disabled during that period." On recross-examination, he said: "A perfectly well man who never had a day's illness in his life might catch flu and have pneumonia and be dead to-morrow. So far as his death is concerned, I would say that his other trouble necessarily had something to do with it, but he could have died without ever having had that. But he had had this other trouble, and he was in good condition to have developed any condition there in that lung, and a perfectly well man could not so easily have done the same thing, but he could have done it, and probably might have died, but not so easily."

Dr. P. J. Manson testified: "Judging from the examination I made of him around the first of April, at that time he was totally disabled and unable to work. . . I think he was sicker than he thought he was, and on April 1st he was unable to undertake any work. . . Assuming that he had lobar pneumonia in January, 1934, and an abscessed lung, and in view of his condition as revealed in my examination on April 1st, as to when he would be able to return to his work, that question is again hard to answer; but in my opinion at the time, it would take him quite a while to recuperate, several months, probably a year, before he would be able to work. During that time the kind of work he was accustomed to would be detrimental to his physical condition, which was my reason for advising him to rest as much as possible. The time it takes normally for an abscessed lung to heal varies according to the size of the abscess and the resistance of the individual, but it usually takes months. [His] resistance when I saw him was quite low. Lobar pneumonia . . is one of the worst forms of pneumonia. Assuming [hypothetically-stated facts], and in addition to the assumption of the above facts, from my examination it is my opinion that he had been disabled for the full term. Further assuming that when he returned here in December he was still spitting up blood and still weak and nervous, I would say he was disabled, and that it was the result of his previous pneumonia;

and again assuming all of the above facts to be true, I would say he was totally disabled during this entire period." On cross-examination he stated: "I have already testified that I believed he was permanently disabled, from all the assumptions and from the information I had, for at least a year. If it is shown that [the insured] actually worked from about the 1st of May, 1934, until October, 1934, as to whether he was totally disabled for that period of time, it is my opinion that this man should not work, and that any work he did might put him in danger of his life; and if he worked during that period of time, it was certainly detrimental to his health. To say that a man is totally disabled, does not mean that he can not wiggle a foot or hand. Some people go on what is called 'nerve' sometimes, not because they are physically able to do it, but because they just won't rest. That does not mean that a person is able to do these things. Though he actually worked continuously from May 1, 1934, to October 11, 1934, as to my opinion as to whether he was totally disabled during that time, he certainly was not flat on his back; but I still contend he should not have worked, and that he should have rested during that period of time, instead of working. . . Answering your question, based upon assumption that this man did work from May 1, 1934 to October 11, 1934, it would appear that he was not totally disabled. At the same time, I feel that he should not have worked."

Dr. R. F. Johnson testified: "Knowing the condition he was in when I examined him [during his last illness], and assuming the following facts [hypothetically stated] to be true . . I am of the opinion that it is probable that his condition at the time of his death was a continuation of the lung condition which existed from January to March, 1934, although I could not be positive. My opinion is that it is possible and probable both. I can't swear to it. . . Ordinarily, where a patient has had an abscess in his lung as big as a goose egg, I don't think it would heal in six months. In my opinion, I don't think the lung abscess which [he] had had healed when he took his last illness." Dr. G. W. Hammond testified: "Assuming the facts above [hypothetically] stated and the condition I found him in, I would say it would take from six to twelve months to recover. If nothing else happened to him, I don't know if he would recover. We can never

tell. . . Under certain circumstances, a man might work when he is not able to. I still say that a man in his condition was unable to work, though as a matter of fact he did work. The day I saw him he was unable to work; and if he remained in the same condition he was when I saw him, he was unable until he died, even though he actually worked. . . I am still of the opinion that he was unable to perform any work, although as a matter of fact he actually worked; and that is true of a lots of patients."

As we understand this testimony of the doctors, they did not yield their opinion that the insured was incapacitated to work, in the sense that he ought not to have worked and was thus totally disabled from working, within the meaning of the *Cato* case. One of the physicians said that "the kind of work he was accustomed to would be detrimental to his physical condition," and in his opinion the insured was "totally disabled during the entire period." As we construe it, their testimony on cross-examination simply meant that, while they thought that he was physically totally incapacitated and unable to work, and that he ought not to have worked, yet if he did in fact work, they could not say that it was impossible for him to work; whereas, under the rulings of the *Cato* and *South* cases, if he was unable to work and in the exercise of ordinary care ought not to have worked, the fact that he may have done minor and different work, not approximating the same livelihood, would not have prevented his condition from constituting total and permanent disability within the meaning of the policy.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*