METROPOLITAN LIFE INSURANCE COMPANY *v.* SAUL;
*et vice versa.*

2

Nos. 12777, 12778.  SEPTEMBER 13, 1939.  REHEARING DENIED OCTOBER 13, 1939.

*Smith, Smith & Bloodworth,* for plaintiff in error.

*A. S. Grove,* contra.

REID, Chief Justice.  This case has been tried before a jury since it first appeared in this court.  *Metropolitan Life Insurance Co.* v. *Saul,* 182 *Ga.* 284 (185 S. E. 266).  The verdict was for the plaintiff for the amount of the premiums claimed to have been paid by him on a policy of insurance on his life, from a period in 1934 up

to the time the case was tried. The claim is that under the terms of the policy as stated in the former decision the plaintiff should have been relieved from the payment of these premiums, by reason of his having become permanently and totally disabled before the time mentioned and before he reached the age of sixty years; that the company refused, after proper proof had been submitted, to relieve him of these payments, and that accordingly, on account of the hazard of having the policy lapsed for failure to pay the premiums, he was under such urgent and immediate necessity of making such payments as would take them out of the classification of voluntary payments, and entitle him to a recovery of them as having been wrongfully required. The plaintiff in error in the main bill of exceptions assigns error on the overruling of its motion for new trial, which contains eighty-four grounds, and on the overruling of various grounds of demurrer, to which ruling exceptions pendente lite were taken before bringing the case to this court the first time. By cross-bill of exceptions the defendant in error assigns error on the overruling of a demurrer to an amendment by the plaintiff in error of its answer.

■ We shall first determine whether the assignments of error complaining of the overruling of the various grounds of demurrer may now be considered. It is earnestly insisted by counsel for plaintiff in error that the former decision of this court dealt only with the general demurrer, and that we should now inquire into the alleged errors in overruling various grounds of special demurrer. When the petition was originally filed, the defendant filed an extensive demurrer containing seven numbered paragraphs and various subparagraphs, challenging the petition on substantially all of its parts. Thereafter the plaintiff amended in response to the demurrer, and again the defendant filed an additional demurrer which appears in the present record and consists of twenty-seven pages, sixty-three grounds, and many subdivisions, some of them running in enumeration from a to j. The plaintiff again amended, and defendant further demurred. This time forty-four grounds of demurrer were urged, and the defendant reiterated and amended various previous grounds of demurrer. Finally the trial court entered on the demurrer a judgment whereby it was "ordered that each of the general and special demurrers is overruled, except" that the right of the plaintiff to recover premiums paid was restricted to

premiums paid after notice and proof, and a certain paragraph of the petition was stricken. The exceptions pendente lite to this order assigned error because the court "erred in not sustaining each and all of the demurrers of defendant." This court then reviewed this judgment, and affirmed those rulings except such as would have permitted a recovery for attorney's fees. After reciting in the opinion that "the demurrers with certain exceptions were overruled, and the insurance company excepted," it was stated (182 *Ga.* 287) : "nor was the petition as amended subject to any of the grounds of the demurrer, except those relating to the claim for attorney's fees and damages." Thus it seems clear to us that the law of the case as stated by the amended petition became fixed, and the parties were concluded as to all grounds of the demurrer theretofore urged. See *Elyea* v. *Cenker,* 184 *Ga.* 179 (190 S. E. 585) ; *W. & A. R. Co.* v. *Third N. Bank,* 125 *Ga.* 489 (54 S. E. 621) ; *Wilson* v. *Missouri State Life Insurance Co.,* 184 *Ga.* 184 (190 S. E. 552).

■ Grounds 7 to 46 of the motion for new trial deal with opinion testimony by the doctors who, at various times, had treated or examined the plaintiff for the ailments which he contends caused his disability. Grounds 48, 49, 50, 51, and 58 relate to testimony of the plaintiff's son, as to his father's disability. This testimony was admitted over objections that the same was irrelevant and incompetent, that the son was not qualified to give such evidence, and that it invaded the province of the jury. Grounds 59, 60, 61, and 62 likewise bring into question the correctness of the court's ruling in admitting, over similar objections, the testimony of plaintiff's physician, Dr. H. C. Sauls, who had treated the plaintiff from the beginning of his claimed disability. Ground 66 likewise deals with the admission of evidence from a non-expert·witness (a bookkeeper in the business formerly conducted by the plaintiff), who was allowed to give an opinion as to whether or not from his observation the plaintiff was able to engage in and perform his customary duties and work about his business. Due to the voluminous nature of the motion, and since all of these questions provoke a ruling upon the same general principle dealing with the extent to which opinion evidence both expert and non-expert will be admitted, they will be treated together.

As will later be seen from the authorities cited, the general rule

is that in the trial of issues witnesses must testify as to facts only, and not as to their opinion deduced from facts, the latter being left as a proper function for the jury. As will also be seen, there are exceptions to that rule. In our State exceptions are intended to be provided for by the terms of two Code sections. Section 38-1708 states the exception as well as the rule, as follows: "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Section 38-1710 declares: "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." The objections in the case now before us, however variously stated, are limited entirely to the claim of error that the opinions of witnesses admitted into evidence "invaded the province of the jury." On this question it is to be borne in mind that the primary issue before the jury was whether or not the plaintiff at a given time, and during a given period, was totally and permanently disabled within the meaning of the pertinent provisions of the contract of insurance. Several of the medical experts, who had examined or treated the plaintiff at various times during the period involved, were permitted to testify, over the objections here mentioned, to the general effect and in terms that the plaintiff was, in their opinion based on their findings and examination (or treatment) of him, totally and permanently disabled. In some instances the language would be one thing, and in other instances another, but at last it was on that very question. Thus it is seen that testimony was being given in the nature of an opinion in favor of one party as against the other on the ultimate fact or question to be found by the jury. Taking the broad, general principle stated above as a premise, and keeping in mind the objections as outlined, let us see from the record in this case whether or not the jury could have made an intelligent finding and could have performed their well-defined function "to ascertain the truth" from the facts alone to which these witnesses testified, independently of and without the benefit of these opinions based upon such facts.

Again, let us repeat that the object of the inquiry was to determine whether the plaintiff was totally and permanently disabled

from certain ailments and disease. One of the witnesses summed up his facts as follows: "My diagnosis at that time was cardio-vascular disease, hypertension and nephritis." He "revealed a blood pressure of 190/100, complained of weakness, dizziness, urine revealed a trace of albumen, numerous casts, arteries showed some hardening out of proportion to his age." Another stated the underlying facts in these words: "I found that he had increased heart dullness (hypertrophy) and hardening of the arteries (arteriosclerosis). . . The disease . . Mr. Saul suffered from at the time I examined him involves the heart, arteries, and kidneys; a condition that we know as cardio-vascular-renal disease." Still another accounted for his opinion by reason of the following constituent factors: "He had thrombosis, or blocking of the vein in the retina of the right eye, . . due to a hardening of the arteries, arteriosclerosis." Another gave, as the basis of his opinion, the following: "My diagnosis was coronary sclerosis, pyorrhea, diabetes, mellitis, and chronic myocarditis. . . Next winter . . he had a stroke, had a cerebral apoplexy, a hemorrhage of the brain. He had left sided hemiplegia, he was dragging his left leg and using a walking cane." The non-expert witnesses, who had been familiar with the physical condition and capacity of the plaintiff before the time of the claimed disability, without undertaking to state the nature of his illness or to explain its character, gave as their reasons for their opinion on his ability to work about his customary duties, information to the effect that from their observation of his appearance, and from observing him undertaking to work, and seeing him try to get about, he was in such condition of suffering and disability as to make it impossible for him to perform the normal and customary duties about his business.

Now, in view of testimony as shown by the record, of which the foregoing examples are typical, do the necessities of the case require that opinion evidence be received, even as concerns the ultimate fact to be ascertained by the jury? It should here be stated in connection with this inquiry that the judge, after admitting the opinion evidence, gave in charge to the jury the following principle to guide them in reference to the weight to be given such evidence: "Now, gentlemen, ordinarily the court receives the testimony of witnesses only as to facts of which they have particular and direct knowledge. In cases of science or the professions, where particular

knowledge is required to understand the situation, the law receives the opinion of those deemed and found to be experts in those lines, and allows those experts to give their opinions upon certain facts. The opinion testimony of an expert can be based upon hypothetical questions, or based upon observations of the expert. However, you should not consider any opinion at all unless the facts upon which it is based are found by you to be true and correct. Even though you are allowed to receive the testimony of experts, you are not bound by such testimony. The law allows you to receive and consider it, along with all the other evidence in the case, in making your verdict. Opinion evidence is not conclusive or controlling, whether it be expert or non-expert. It is submitted to you for whatever you think it be worth. The jury, upon a review of the case or by reference to their own experience, may discard the opinion of experts entirely. I charge you that an expert may aid the jury, but can not perform the functions of a juror, and, under the guise of giving testimony, state his legal conclusions. Non-experts are authorized to give opinions sometimes; but the opinions of non-experts must be backed up by reasons which the non-expert gives, and the effect in weight is the same as I have explained to you as to experts."

As applicable to this question before us we quote the following from 20 American Jurisprudence, § 782: "In many cases it is asserted as a broad general rule, often assumed to be an inflexible rule of law, that while an expert may be permitted to express his opinion, or even his belief, he can not give his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by them. In other words, while a jury is entitled to the aid of experts in determining the existence or non-existence of facts not within common knowledge, an expert witness must not take the place of the jury, and declare his belief as to an ultimate fact." Citing Keefe v. Armour & Co., 258 Ill. 28 (101 N. E. 252, Ann. Cas. 1914B, 188). See also State of Iowa v. Steffen, 210 Iowa, 196 (230 N. W. 536, 78 A. L. R. 748, 755, notes); Coca-Cola Bottling Co. v. Munn, 99 Fed. 2d, 190; Patrick v. Rice, 98 Fed. 2d, 550; McCoy v. General Glass Cor. (Ind. App.), 17 N. E. 2d, 473; Taylor v. Kelvin, 121 N. J. L. 142 (1 Atl. 2d, 433); Crane v. Railway Express Agency, 293 Ill. App. 328 (12 N. E. 2d, 672). From the same text (pp. 654, 659) we find the following: "Assum-

ing, however, that the issues in a case properly call for the admission of expert opinion testimony, there seems logically to be no wrongful invasion of the province of the jury in permitting an opinion to be expressed upon an ultimate fact where that fact is one which is properly a matter of expert opinion. In such case, as in the case of an eye-witness to a decisive fact, if the jury are satisfied of the trustworthiness of the evidence, the evidence may be conclusive of the issue, but they are not bound to accept the opinion or to render the verdict according to it. Every expert opinion rests on an assumption of fact; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proved; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts. There is no doubt, however, that there are many courts committed to the broad rule that an expert witness may not testify to his opinion upon the ultimate fact in issue before the jury or be permitted to invade the province of the jury. . . The opinions of lay or non-expert witnesses who are familiar with a person whose physical condition is in question, and have had opportunity for observing him, are competent evidence on issues concerning the general health, strength, and the bodily vigor of such person, his feebleness or apparent illness; lay witnesses have been permitted to testify that a person looked bad, that he looked feeble, that he was lame or could scarcely walk, that he was so ill as to be beyond asking anything or in a condition to know anything." It is noted (p. 722, § 862) that a very liberal practice is indulged by the courts in permitting opinion testimony of experts on matters in the field of medical practice; and that a duly qualified physician may state his opinion as to the probable continuance and future course of an existing disease or disability, as to the duration and permanency of, or the reasonable probability of the ultimate recovery from injuries, and as to what extent or how an injury will affect a person's ability to perform labor.

The very question of disability and the extent of it are relative. If exceptions are made in such matters as value, insanity, and the

identity of handwriting, and in similar cases where the thing sought after is found only in the realm of the subjective, where no witness could point his finger and say "it is here" or "it is there," it seems to us that there might well arise, as in the instant case, physical disability of such nature and character, and the extent of which might be so difficult of ascertainment, that a jury, in order to do justice between the parties, should very properly have the benefit of the belief and opinion of an expert who has brought to the subject his skill and superior knowledge and facilities. True it is that the jurors are the ultimate triors; and as stated above, and comprehended in our well-defined rules, where it is possible for them to take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own, independently of the opinion of others, then undoubtedly this should be done. But we think it is also true that if the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, then the light of that knowledge should not be withheld from the jury because of such a fine distinction in the ordinary rules of evidence. This would not be true if the conclusion called for involved mixed questions of law and fact. Such a case as that was the one reviewed in the Fifth Circuit Court of Appeals, where Judge Sibley, in Hamilton v. United States, 73 Fed. 2d, 357, said: "Such an opinion confuses two questions, to wit, whether the insured could do various kinds of work without impairing his health, and whether doing such work as he could do would amount to following a substantially gainful occupation. On the first question the physician may reasonably and properly enlighten the jury by an expert opinion; but he knows no more about the second question, so far as it is one of law, than any other man— than the jurors themselves. In such matters he is not qualified to lead and may mislead the jury [citing Georgia R. &c. Co. v. Hicks, 95 Ga. 302 (22 S. E. 613); Chamberlayne's Handbook on Evidence, § 679]. Opinions, even expert opinions, are allowed by law of exception to the general rule that a witness is to give facts observed, but not his conclusions from them, and they are to be allowed only when there is real helpfulness or a necessity to resort to them." There the suit was on a war-risk insurance policy, and

the questions submitted to the doctors included a recital to them of the definitions of total and permanent disability as given by administrative regulations intended to apply to those policies. Thus the witness was, by his answer to the questions, expected to determine the final result of the case for the jury, if they should follow in his lead.

There are many similar decisions which follow along the same line. For instance, United States v. Spaulding, 293 U. S. 498 (55 Sup. Ct. 273, 79 L. ed. 617), relied on by counsel for the plaintiff in error, was such a case. Many others are to be found in the annotations in 111 A. L. R. 598, to the case of Cooper v. Metropolitan Life Insurance Co., 323 Pa. 295 (186 Atl. 125). From these annotations we discover many decisions in other jurisdictions which hold, as in Cody v. John Hancock Mutual Life Ins. Co., 111 W. Va. 518 (163 S. E. 4, 86 A. L. R. 354), that testimony of the character involved in the present case does not invade the province of the jury where the characteristics of the disease and its effects are such as to make it difficult for physicians to make them clear to a jury. See Bankers Lloyds v. Montgomery (Tex. Civ. App.), 42 S. W. 2d, 285; John Hancock Mutual Life Ins. Co. v. Schroder, 235 Ala. 655 (180 So. 327); Mutual Benefit Health &c. Asso. v. Bunting, 133 Fla. 646 (5) (183 So. 321); Com. Casualty Ins. Co. v. Zajic (Md.), 1 Atl. 2d, 903; Conlon v. John Hancock Mutual Life Ins. Co., 56 R. I. 88 (183 Atl. 850); Becker v. Prudential Ins. Co., 124 Pa. Super. 138 (188 Atl. 400); Pearce v. Rodell, 283 Mich. 19 (276 N. W. 883); Cody v. John Hancock Mutual Life Ins. Co., 111 W. Va. 518 (163 S. E. 4, 86 A. L. R. 354). We find in our own reports some cases where testimony of this character has been received in evidence by the courts on the issues. In most cases, however, objections such as are dealt with here do not appear to have been made. See *New York Life Ins. Co.* v. *Bradford, 57 Ga. App.* 657 (196 S. E. 92), where doctors were permitted, without objection, to testify that the plaintiff was not totally and permanently disabled. In *Kelly* v. *Jefferson, 178 Ga.* 427 (173 S. E. 133), witnesses were heard to testify that the plaintiff was disabled, and no objection appears to have been made. In *Metropolitan Life Insurance Co.* v. *Manufacturers National Bank, 54 Ga. App.* 771 (189 S. E. 83), the record shows similar testimony from physicians. It is perhaps because of difficulty in ascertainment as to extent of

disability, as well as the obscure characteristics of disease, that our statutory scheme of workmen's compensation allows a practice which freely permits opinions of medical experts as to percentage and extent of disability, and particularly as to whether or not it be total and permanent. See Code, § 114-707; *Sears* v. *Griggs*, 48 *Ga. App.* 585 (4) (173 S. E. 194). So on this important question we do not find that we run counter to any principle of law established in our State when we follow, as we do, what we believe to be the general weight of authority, and, in circumstances such as presented under this record, hold that opinion evidence of experts on the final question at issue may be received where instructions are appropriately given, as in the instant case, to the effect that such testimony does not bind the jury, and that they may give just such weight to it as in all the circumstances they may see fit to do.

■ As to the non-expert evidence the admission of which is challenged, these witnesses outlined to the jury the reasons for their opinion; and in the light of the charge given on the subject, we see no reason to have excluded the evidence from the jury. It is to be kept in mind, as pointed out above, that the non-expert witnesses did not undertake, as did the expert, to draw conclusions as to total and permanent disability, but limited their opinions to whether the plaintiff could, under circumstances stated, perform certain duties about his work. Thus the jury was left to consider whether this amounted to total and permanent disability.

■ In the motion for new trial complaint is made that during the trial counsel for the plaintiff, having read from certain depositions testimony which the witness had given on direct examination at the instance of the plaintiff, stated in substance that he wished to read part of the cross-examination which counsel for the defendant had "withdrawn." Counsel for the defendant thereupon moved that a mistrial be declared. The court overruled the motion, and permitted the plaintiff to offer the testimony which counsel had proposed to read, as in behalf of the plaintiff, without reference to whether it had been brought out on cross-examination at the instance of the other side, and instructed counsel for the plaintiff that in any other such instance he should simply offer such evidence as he wished to, making no reference to whether it was brought out on cross-examination. It is contended that reference to the fact that this evidence was brought out on cross-examination,

and not offered by the defendant, was so prejudicial as to require that a mistrial be declared. It is wisely recognized in our law that instances of this kind in the course of a trial can not always be fully anticipated, or perhaps in all instances correctly reviewed. Accordingly, under the Code, § 81-1009, certain duties are imposed on the trial judge with reference to the supervision of argument and conduct of counsel, and in his discretion he is empowered to order a mistrial if plaintiff's attorney is the offender. The decision of the judge will not be interfered with, unless it can be shown that his discretion has been abused and some positive injury done by remarks of counsel. See *Adkins* v. *Flagg,* 147 *Ga.* 136 (2, *a*) (93 S. E. 92), and cit. The matter in controversy involved a colloquy between court and counsel with reference to introduction of evidence, and from the recitals in the record we can not see that any positive harm came to the defendant.

■ Grounds 48, 49, 50, 51, 52, and 53 deal with objections to testimony of Abe S. Saul, son of the plaintiff. This testimony was all on the subject of the amount of time spent in Atlanta by the plaintiff and the amount of work done by him during the period of the claimed disability. There is no merit in any of the objections urged. The objections are similar in nature, and are not here dealt with in detail. An illustration of the type of objection is shown where counsel asked the question: "State whether or not Mr. Joseph Saul had been under the care of Dr. Cliff Sauls from that time until now." To this question the witness answered: "Yes, sir. He has been under Dr. Cliff Sauls' care since August, 1930, right up until the present time." The objection was that this was purely a conclusion of the witness. It seems to us that this was a plain statement of fact; and that if counsel desired to challenge the knowledge of the witness on the subject, full opportunity to do so was afforded him on cross-examination. The same may be said as to other objections embraced in these grounds.

■ It is contended in ground 54 that the court erroneously permitted Abe S. Saul to testify that the date of the plaintiff's birth was November 17, 1871. Birth or age may be proved by general repute in the family. Code, § 38-303, and cit. This ground is plainly without merit. The plaintiff's son was permitted to testify, in explanation of the payment of the premiums on the policy involved, made by him and his brother for the account of his father,

that "naturally we had to pay it, or the company would have lapsed the policy." The objection was that this was not a matter within the knowledge of the witness. This was merely in explanation of the conduct of the witness in relation to matters under inquiry; and since admittedly the company was demanding the payment of the premiums, testimony of this character could not be said to have injured the defendant.

■ Grounds 56 and 57 complain of the introduction by the plaintiff of certain correspondence between him and the defendant, concerning the payment of premiums during the period of claimed disability and for which recovery was sought; and of the introduction of certain premium notices and receipts covering the same period. While these were matters which may not have been in direct dispute on the issues made, yet when the plaintiff had alleged payment of these premiums the defendant had filed many special demurrers calling for information as to how, when, and in what manner and to whom they were made. In response to these demurrers the plaintiff set up all of these documents in the pleadings. While the record might well have been shortened by omissions of much proof of many of these matters about which there was no real controversy, it is understandable that in the circumstances cautious counsel would wish to remove all doubt on the subject. There was no error in the admission of these documents.

■ Grounds 63, 64, and 65 complain that the court permitted Dr. H. C. Sauls to give testimony in the nature of an explanation of his written answers to questions regarding the physical condition of the plaintiff, which had been introduced in evidence by defendant. This testimony was not in any way an impeachment of previous evidence by the same witness, but was offered as an explanation of certain previous isolated statements which, without the explanation, might have been misunderstood. See *Brown* v. *McBride*, 129 *Ga.* 92 (58 S. E. 702); *Georgia Railway & Electric Co.* v. *Dougherty*, 4 *Ga. App.* 614 (2) (62 S. E. 158); *Spearman* v. *Sanders*, 121 *Ga.* 468 (2) (49 S. E. 296).

■ Ground 67 complains that the judge erroneously excluded from evidence a certified copy of a report of the referee in bankruptcy in a proceeding in the United States district court, in which findings were made that certain defendants in a contempt proceeding had been guilty of fraudulent conduct in secreting and with-

holding merchandise from the possession of their trustee in bank-ruptcy, and which showed that large quantities of such goods had been delivered to J. Saul & Company, which, according to the record, was the trade-name under which the plaintiff, J. Saul, was then (1904) doing business. When this evidence was offered, on inquiry by the court it was stated by counsel for the defendant that it was offered for the purpose of impeaching the plaintiff, J. Saul, who had testified by deposition in the instant case. One of the methods by which a witness may be impeached is proof of conviction of an offense involving moral turpitude. *Sheffield* v. *Hammond,* 41 *Ga. App.* 76 (151 S. E. 663), and cit. Although J. Saul was not one of the defendants in the contempt proceeding, it was contended in that proceeding that he had aided or had guilty knowledge of the fraudulent withholding of merchandise from the trustee in bankruptcy. It also appears from the record that J. Saul was interested in assisting in the defense of the defendants named in the bankruptcy proceeding. It appears from this ground, and from the report of the proceeding in the published reports of decisions of the United States district court, that the judgment of conviction against the defendants in that proceeding was reversed, and that there was no conviction of any such offense as to be ap-plicable in connection with the purpose for which this evidence was sought to be used. "A witness may be discredited by showing his conviction for an offense, but it is not competent to discredit him by showing merely that he has been charged with and tried for an offense. Until there is proof of conviction he is protected by the legal presumption of innocence." *Killian* v. *Ga. R. & B. Co.,* 97 *Ga.* 727 (2), 730 (25 S. E. 384). It is also contended that this evidence was admissible to contradict the statement of the plaintiff respecting his age, which was one of the facts in the case about which there was dispute. It is to be borne in mind that the plaintiff had testified only by deposition, and he had not been examined in respect to the statements contained in this document. Inasmuch as he had not been confronted with the document by which it was sought to impeach his testimony, or apprised of the contention that its effect was to contradict his statements, we are of the opinion that the rule forbidding use of contradictory state-ments to impeach evidence taken by deposition is applicable. Code, § 38-1803; *Estill* v. *Citizens & Southern Bank,* 153 *Ga.* 618 (7 *c*)

(113 S. E. 552); *Raleigh & Gaston R. Co.* v. *Bradshaw,* 113 *Ga.* 862 (3) (39 S. E. 555). It is also true that where statements are offered solely for the purpose of impeachment, and are excluded, the exclusion may not be complained of on the ground that they would have tended to establish other independent facts in the case. Ordinarily where evidence is offered for the sole purpose of impeachment, it can not be used for anything else. *City of Atlanta* v. *Brown,* 73 *Ga.* 630. There was no error in the refusal to admit this testimony.

With ground 68 begin the complaints concerning the charge of the court. It criticizes a part of a sentence taken from the judge's explanation and outline of the issues and admissions of the parties, stating that the defendant "admits notice of disability." To understand fully this criticism it is necessary to outline that the plaintiff under his pleadings and proof contended that he became totally and permanently disabled in May, 1931, and that he gave to the company on March 1, 1934, formal notice of disability, total and permanent, this being the character of notice required under the terms of the policy. The delay in giving notice caused the company to enter a special plea of laches, contending thereby that the long delay in submitting notice and proof of claim rendered difficult ascertainment of the truth as to the plaintiff's condition. The issue made on this plea formed a part of the general questions which the jury had to determine. The plaintiff contended that he was of foreign birth, had a poor understanding of the English language, and before the time he gave formal notice to the company he neither knew nor had been advised of the meaning of the language in the policy which purported to give relief from payment of premiums during the period of the claimed total and permanent disability. As the pleadings stood at the time of the trial under previous rulings of the court, recovery was sought only for those premiums paid after the formal notice of March 1, 1934. None was claimed for those premiums paid between May 1, 1931, and March, 1934. In the defendant's answer it was averred that "while *it had notice of the claim* which plaintiff through his said attorney made, to the effect that plaintiff was totally and permanently disabled," it nevertheless denied that this disability actually existed. It was not disputed that the defendant received a letter on March 1, 1934, giving the date of notice and

details of the disability. Nothing in the record tended to raise any issue on that question. In the same sentence in which the judge used the language set out above, and which it is claimed was erroneous, he clearly stated to the jury that although the defendant admitted the notice of March 1, 1934, it nevertheless denied that the disability actually existed. It is contended that the statement that notice of the disability was admitted tended to prejudice the consideration of the defendant's plea of laches. There would be merit in this contention if we stopped at this point; but examination of the charge as a whole, in the light of the record carefully reviewed, convinces us that the judge submitted these issues with remarkable clarity. Elsewhere, and in proper context in his charge, he fully and clearly explained to the jury the defendant's contention that the plaintiff was barred by laches. He pointed out that the jury should find against the plaintiff on this issue if the defendant's proof showed that the long delay and lapse of time rendered the ascertainment of the truth so difficult as to make applicable the equitable doctrine of laches or stale demand. Taking the charge as a whole, the effect of it on this question was to say to the jury in substance, and we think correctly, that while the defendant admitted receiving notice of the disability sent to it on March 1, 1934, it nevertheless denied that the disability existed, and contended in a special plea that even if it did exist the plaintiff, under equitable principles, was too late in giving notice. "Where in a civil case undisputed evidence clearly establishes a particular fact, it is not error for the judge, in his charge to the jury, to assume or indicate that the fact has been proved." *Watkins* v. *Stulb,* 23 *Ga. App.* 181 (98 S. E. 94). See *Dexter Bkg. Co.* v. *McCook,* 7 *Ga. App.* 436 (67 S. E. 113).

██ The criticism in ground 69 is directed at the following charge: "Now, gentlemen, that provision [the disability clause sued on, as previously quoted] in this policy is the basis in this suit upon which the plaintiff seeks to recover premiums already paid, and seeks to have it established that he is now disabled and should not pay the premiums." The criticism that under this instruction recovery would be permitted if the plaintiff "is now disabled," without regard to the permanency of the disability, is without merit. Manifestly the court here submitted to the jury merely the proposition that the policy was the basis on which the plaintiff

sought two things; (1) a recovery of premiums already paid, and (2) the establishment of the right to relief from further payment of such premiums. This is fully understood when other portions of the charge are examined. Ground 70 complains of substantially all of that part of the charge which submitted the definition of total and permanent disability as defined in the policy, and stated the conditions under which the plaintiff might be permitted to recover. It is argued that the definition so given tended to exclude from the jury the issue as to whether the disability was permanent as well as total, and that under the charge as given the jury might have found for the plaintiff upon proof of total disability at or before the time of trial or before the plaintiff became sixty years of age, whether under the evidence they should believe it would continue permanent or not. Without extended discussion it may be stated that the charge gave in substance the definition of total and permanent disability as outlined in *Cato* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392 (138 S. E. 787); and while the language in the respective clauses in the two policies under consideration is slightly different, the purposes to be accomplished and provided for by the contract were substantially the same, and the cases should be governed by like principles. See *Prudential Insurance Co.* v. *South,* 179 *Ga.* 653, 655 (177 S. E. 499, 98 A. L. R. 781).

Complaint is made in ground 71 of the charge with respect to whether the premium payments were made under "immediate and urgent necessity." The instruction was as follows: "A person making voluntary payments of money can not ordinarily recover back such payments, unless he protests such payments at the time they are made, and proves that they were made under some immediate and urgent necessity in order to prevent loss to himself by the insurer declaring the policy lapsed." The criticism is that voluntary payments can not be recovered, although made under protest, "unless made under some unqualified, immediate, and urgent necessity." These are substantially the same contentions as made in support of the demurrers to the petition as amended. This court in its former decision (*Metropolitan Life Ins. Co.* v. *Saul,* 182 *Ga.* 284, 185 S. E. 266), held as follows: "Under the allegations, the premiums paid after furnishing the proof of disability, and required in order to prevent the insurer from treating the policy as lapsed, were recoverable; the allegations being sufficient

to show that the payments were 'made under an urgent and immediate necessity therefor,' and were not voluntary. Code of 1933, § 20-1007; *Fenwick Shipping Co.* v. *Clarke,* 133 *Ga.* 43 (65 S. E. 140)'." We think the charge harmonizes with that holding, and is not subject to the criticism made.

■ Grounds 72, 73, and 74 complain that certain enumerated premiums paid from April 20, 1934, to October 20, 1934, were improperly included in the verdict, because there was no evidence to support such a recovery. It is agreed that payments made after October 20, 1934, were made under such urgent and immediate necessity as to come within the rule permitting recovery, if the plaintiff was otherwise entitled to prevail. But as to the payments in question the issue was left open as to whether they were voluntary or were made under such circumstances as would authorize a recovery. We state this in order to make it clear why the contention is made with reference to these premiums only, and not to those subsequently paid. This criticism is, however, answered by what has been said on the general issues of the case. The rule was fixed by our former decision, as herein explained; and we think the evidence supported the plaintiff's allegations.

■ The remaining grounds relate to the form of verdict submitted to the jury, and, although variously stated, chiefly complain that the judge, in giving final instructions as to the form of the verdict, omitted an instruction that if the jury should believe that the defendant was entitled to prevail on the general issues in the case, or on its special plea of laches, the form of verdict should be, "We, the jury, find for the defendant," or substantially to that effect. Instead of submitting the case to the jury on the general issues and on the special plea of laches, the judge submitted specific questions in the following language: "There are four questions, as I have stated, for your determination. The first is whether or not the plaintiff, Joseph Saul, was wholly and permanently disabled before he became sixty years of age; and I have written here a form of verdict in the alternative—he was, or was not, wholly and permanently disabled before he reached the age of sixty. Of course it is your duty to strike out either 'was' or 'was not.' Let that portion of your verdict define and set forth your findings. The next is, 'We further find that the payments of premiums were, or were not, made under immediate and urgent

necessity therefor;' and you would find that they were or were not, and strike out the portion that you do not find. Next, 'We further find that the plaintiff was, or was not, guilty of laches in presenting his claim,' striking out the language that you do not find. Next, 'We further find against the defendant and in favor of the plaintiff in sum of (blank) dollars, and interest to date,' the amount, if you so find, being $7553.84. If you find that he was disabled before reaching the age of sixty, and that payments were not voluntarily made, and that he was not guilty of laches,—if you find that, it would be your duty to find the interest at seven per cent. on these items, making up this total from the dates of the respective payments until this date. When you have made a verdict, you can use this form which I will send out with you, making it conform to your findings. Let your verdict be signed by your foreman, dated, and returned into court. I will send out to you the documentary evidence."

It appears from the record that these questions were framed and submitted by the judge without request from counsel for either side, and that when submitted to counsel they were in substance the same as their actual form when finally written and sent out with the jury to be answered as their verdict. When submitted to counsel for the plaintiff in error, as appears from a note by the judge in connection with these grounds, counsel stated that he would not agree that such form should be submitted to the jury, but assigned no specific reason or ground, and made no suggestion as to form. In equity cases the judge is authorized, under the Code, § 37-1104, in appropriate instances to submit specific questions for answer by the jury. This has many times been held to be the proper practice, and frequently in complicated cases it would be expected to obtain more intelligible results. See *Hardin* v. *Foster,* 102 *Ga.* 180 (29 S. E. 174); *Robertson* v. *Aycock,* 170 *Ga.* 523 (153 S. E. 213); *McWhorter* v. *Ford,* 142 *Ga.* 554 (83 S. E. 134). If counsel deem the case an improper one for submission of special issues, they should call the court's attention to this fact at the time the charge is delivered. *McWhorter* v. *Ford,* supra. Where issues were substantially submitted in questions propounded, if counsel desired fuller submission or submission in different form, they should have requested it. *Greer* v. *Willis,* 67 *Ga.* 43; *Obear* v. *Gray,* 68 *Ga.* 182 (2). We hold that the judge had the right to submit specific

questions in the case, and that they were appropriately framed to provoke a decision on the truth of the issues in the case. As to the specific complaint that they provided no formal language as a finding for the defendant, it may well be said that where specific issues which clearly control the entire case and by their answers make a necessary result either for the plaintiff or the defendant accordingly as the jury may find, it will not be necessary that any such language as "for the plaintiff" or "for the defendant" be used. For instance, if in the present case the first question be answered in the affirmative, as it was, and if the second question be answered in the affirmative, as it was, and if the third question be answered in the negative, as it was, no result could follow except a decree for the plaintiff, and a further formal finding of so many dollars principal and interest might well be treated as surplusage. Likewise, if the answer to the third question had been in the affirmative, or if the answer to either the first or second question had been in the negative, it would have followed of necessity, and as a matter of course, that a decree denying relief to the plaintiff and awarding judgment for the defendant would have been entered.

In *Columbus Power Co.* v. *City Mills Co.,* 114 *Ga.* 558 (40 S. E. 800), this court said: "The failure of a jury to whom a case is submitted upon special issues of fact to answer a question which is ab initio immaterial, or which, in view of another findng, becomes so, does not vitiate their verdict, when, taken as a whole, it is sufficiently comprehensive to support a judgment which properly disposes of the entire case. . . Nor, in such a case, is the verdict rendered invalid by the submission to the jury of immaterial questions or the answering thereof." Unnecessary and inappropriate questions submitted will not result in new trial, where proper question submitted and answered covered the whole controversy. *Wayne* v. *Blun,* 92 *Ga.* 338 (2) (17 S. E. 288) ; *Bell* v. *Hutchings,* 86 *Ga.* 562 (12 S. E. 974). See *Berry* v. *Brunson,* 166 *Ga.* 523 (143 S. E. 761). "It was the law, we are aware, under the old equity practice, for the jury to authorize by their verdict, in express terms, a perpetual injunction; but we think that the special-verdict act now dispenses with that necessity. If the special facts found or admitted make a case for perpetual injunction, the chancellor—the court—the presiding judge—may decree it upon such facts, without words in the verdict saying, 'we find that the defendants be

perpetually enjoined.'" *McManus* v. *Cook*, 59 *Ga.* 485, 489. The court need only submit to the jury such pertinent issues as will draw out the material facts, under the act of 1876, p. 105, and upon evidence which has been submitted to the jury. *Bryan* v. *Osborne*, 61 *Ga.* 51. Finally, we think it perfectly clear that the jury, from the nature and manner of the submission of the questions, should have fully understood their import and what they meant as between the plaintiff and defendant; and therefore hold that no reversible error was committed.

*Judgment affirmed on the main bill of exceptions. Cross-bill dismissed. All the Justices concur.*