## 37071. SMITH v. THE STATE.

HILL, Presiding Justice.

The defendant was charged with murdering her live-in boyfriend. Her defense was that she shot him in self-defense. The case is before us to consider whether an expert's opinion regarding the "battered woman syndrome" was admissible at trial, or was properly excluded on the basis that the expert's opinion as to the fear of a battered woman and this defendant in particular was the ultimate fact to be decided and hence invaded the province of the jury. We granted certiorari to review the holding of the Court of Appeals that the expert's opinion was properly excluded as an ultimate fact invading the province of the jury. *Smith v. State,* 156 Ga. App. 419 (274 SE2d 703) (1980).

The testimony of the defendant showed the following: The defendant, Josephine Smith, returned to her apartment about 11 p.m. and was met outside by her boyfriend, who lived with her off and on most of the time and was the father of her second child. The defendant washed some clothes and then went upstairs to go to bed. The boyfriend started rubbing her and she told him to stop because she was tired. He shook her and said: "You don't tell me when to touch you."

The defendant got out of bed, put on some pants and started to go back downstairs when the boyfriend balled his fist and told her she was not going anywhere. She then sat on the foot of the bed and started to roll her hair. The boyfriend kicked her in the back. When he started to kick her again the defendant put her hair pick behind her and the boyfriend kicked it. As the defendant stood up, the boyfriend hit her in the head with his fist. He then grabbed her by the

throat, choked her and threw her against a door.

When the defendant got loose, she ran to the chest of drawers, grabbed her gun and ran downstairs to call her mother. She was unable to use the telephone because the boyfriend had taken the phone off the hook upstairs and ran downstairs and took the phone away from her. The defendant tried to go back upstairs but the boyfriend grabbed her. The defendant then ran to get out of the apartment. As she was running out, the boyfriend slammed the door on her foot. The defendant then fired the gun three times with her eyes closed. She went to a neighbor's house and called the police.

When the police arrived, they found the victim with wounds in the head, neck and abdomen. No officer noticed any blood or bruises on the defendant. Although she said that she could not wear shoes other than flip flops because her foot had swollen, no one noticed her limping.

The medical examiner testified that the victim was in his early twenties, was 5 feet 4 inches tall and weighed 144 pounds. The examiner testified that any one of the three wounds inflicted on the victim could have been fatal, and that he died as a result of those wounds.

The defendant also testified that she was 23 years old, weighed 135 pounds, and the apartment was in her name. She testified that she met the victim her junior year in high school when she was 17 and had a child by him but never married him or gave the child his name. She stated that he hit her in the eye with his fist about a month after they met, that he had beaten her periodically, particularly when she dated so she quit seeing other men, that she was scared to quit seeing the victim because he threatened her, that the beatings increased in frequency when she moved from her mother's house to the apartment, that after he beat her he would apologize and say he loved her, that she didn't call the police or tell her friends because she believed him when he said he wouldn't do it anymore, and that earlier on the day of the shooting the victim threatened her and she gave him ten dollars after asking him not to do that in the presence of her sister. She testified that on the night of the shooting the victim said he was going to do something to her and call her mother to come get her, that she was scared he was going to hurt her more than before, and that she shot the victim in fear of her life.

The defense called a clinical psychologist whose testimony (except for preliminary questions as to the psychologist's qualifications as an expert) was ruled inadmissible on the basis that the jurors were able to draw their own conclusions as to whether the defendant acted in fear.

The defendant was found guilty by the jury of voluntary

manslaughter and was sentenced to serve 15 years. She appealed, enumerating as error the exclusion of the psychologist's testimony during the guilt phase of the trial and the exclusion of the psychologist's report during the sentencing hearing.

The clinical psychologist testified that she received her B.S. degree from Emory University and her Ph.D. from the University of Connecticut, that she had been a clinical psychologist for five years, that she was on the faculty at Emory School of Medicine and also in private practice, that she had served as the clinical supervisor at the battered woman's shelter in the City of Atlanta for the past two and one-half years in which capacity she was responsible for counseling battered women, that she had made case histories of interviews with battered women, and that she was prepared to testify as to whether the defendant's situation was similar or dissimilar to the situations of other battered women. The state did not urge that the witness was not an expert. Out of the presence of the jury the witness testified that she had interviewed the defendant for approximately 50 minutes, that she had spent an hour and a half talking with 13 of her family and friends, that there are well documented reasons why women suffering from the battered woman's syndrome fail to report physical abuse to police or their families, that a battered woman does not report the abuse to members of her family or friends out of fear that they might take action into their own hands and be injured and she would rather be hurt than endanger somebody else, that it is not unusual for a battered woman who has been abused over a long period of time to remain in such a situation, that a battered woman's self-respect is usually very low and she believes she is a worthless person, that a battered woman typically believes that the man is not going to repeat the abuse when he promises not to do it again, that the battered woman becomes increasingly afraid for her own well-being, and that the primary emotion of a battered woman is fear. The witness testified further that the history she took from the defendant revealed a four year relationship with her boyfriend in which abuse began very early and escalated over the course of that relationship, that the defendant continued the relationship for three basic reasons — she loved him, she believed him each time he said that he loved her and that he was never going to repeat the abuse, and she was afraid that if she tried to leave she would be endangering her life. The witness concluded that in her professional opinion the defendant fell within the battered woman profile and had the typical battered woman's syndrome.

The Court of Appeals affirmed the trial court's exclusion of the expert's testimony on the basis that a witness is not allowed to express an opinion as to the ultimate fact to be decided by the jury

because to do so would invade the province of the jury. *Smith v. State,* supra. We granted certiorari to consider two questions: (1) Whether the expert testimony concerning the "battered woman's syndrome" should have been admitted, and (2) whether Federal Rule 704 should be the rule in Georgia.

Concerning the rule that an opinion should not be allowed which would "usurp the functions of the jury," Wigmore wrote in 1940 that it is so misleading and unsound that it should be entirely repudiated, and concerning the rule that an opinion should not be allowed "on the very issue before the jury," Wigmore said that it is another erroneous test, impracticable, misconceived, and lacking any justification in principle. VII Wigmore on Evidence (3d Ed.) §§ 1920, 1921, pp. 17-19 (1940).

Following Wigmore's criticism, the rule was reexamined. Rule 409 of the Model Code of Evidence proposed by the American Law Institute in 1942 reads as follows: "An expert witness may state his relevant inferences from matters perceived by him or from evidence introduced at the trial and seen or heard by him or from his special knowledge, skill, experience or training, whether or not any such inference embraces an ultimate issue to be decided by the trier of fact . . . ."

Since 1942 there has been a trend to abandon or reject the rule with the result that now in a majority of states an expert may state his opinion upon an ultimate fact, provided that all other requirements for admission of expert opinion are met. McCormick on Evidence, (2d Ed.) § 12, p. 27 (1972). McCormick cites Grismore v. Consolidated Products, 232 Ia. 328 (5 NW2d 646) (1942), as having begun the trend. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1 (5 SE2d 214) (1939), discussed below, was cited with approval along with other cases collected in Grismore v. Consolidated Products, supra, 5 NW2d at 663.

Rule 704 of the Federal Rules of Evidence which went into effect in 1975 provides that "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, this rule eliminates a ground for exclusion, does not in and of itself provide for the admission of opinion testimony, and is qualified by other rules including Rule 702 which provides that: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Thus, under the federal rules opinion testimony as to the ultimate issue is admissible if it will assist the trier of fact to

understand the evidence or determine a fact in issue. United States v. Scavo, 593 F2d 837, 844 (8th Cir. 1979); Moore's Federal Practice, Federal Rules of Evidence, 1981, Part 2, pp. 204-205.

In *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1, supra, the primary issue for the jury was whether or not the plaintiff was totally and permanently disabled within the meaning of an insurance policy. Several medical experts who had examined him testified over objection that in their opinion the plaintiff was totally and permanently disabled. The insurance company had objected to the admission of those opinions on the ground that they "invaded the province of the jury." Acknowledging that the general rule was that an expert cannot give an opinion upon the precise or ultimate fact in issue before the jury, the court posed the question for decision as follows: "[D]o the necessities of the case require that opinion evidence be received, even as concerns the ultimate fact to be ascertained by the jury?" (189 Ga. at 6). Noting that the jury had been instructed that opinion testimony was not conclusive, controlling or binding on the jury and could be entirely disregarded (189 Ga. at 6-7), the court found the opinions admissible because the knowledge of the experts upon the issue involved was not known to the average person, saying (189 Ga. at 9): "True it is that the jurors are the ultimate triors; and as stated above, and comprehended in our well-defined rules, where it is possible for them to take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own, independently of the opinion of others, then undoubtedly this should be done. But we think it is also true that if the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, then the light of that knowledge should not be withheld from the jury because of such a fine distinction in the ordinary rules of evidence."

In some cases since *Saul* the general rule excluding opinion testimony as to the ultimate fact has been applied. See *Jones v. State,* 232 Ga. 762 (2) (208 SE2d 850) (1974), quoted by the Court of Appeals in this case. In others, the *Saul* rule has been applied, *King v. Browning,* 246 Ga. 46 (1) (268 SE2d 653) (1980), and has even been expanded to include mathematical computations based upon legal conclusions of the expert, *Stewart v. State,* 246 Ga. 70 (4a) (268 SE2d 906) (1980).

Professor Agnor, writing in 11 EGL Evidence (Civil) § 16 (1979), said: "A witness may testify as to his opinion where the question is a proper one for opinion evidence, even though it is the ultimate issue for the jury in the case. The preceding statement of the rule requires

explanation. At first glance it may appear to be an incorrect statement of the law. It is submitted, however, that this is a correct statement of the present rule in Georgia."[1] Professor Green pointed out that Georgia courts admit expert testimony on such matters as sanity with "commendable regularity" where that is the very fact in issue. Green, Ga. Law of Evidence, pp. 283-284, § 113 (1957). See *Mars v. State,* 163 Ga. 43 (9) (135 SE 410) (1926). (In the case before us, the medical examiner testified as to the cause of the victim's death.)

The cases show that in murder trials the state has offered the opinions of experts as to the "battered child syndrome" without challenge. *Stamper v. State,* 235 Ga. 165, 168 (219 SE2d 140) (1975); *Lackey v. State,* 246 Ga. 331 (271 SE2d 478) (1980). This is the accepted practice. In State v. Wilkerson, 295 N.C. 559 (247 SE2d 905) (1978), the court said (at p. 912): "As far as our research reveals, all courts which have considered the question . . . have concluded that such expert medical testimony concerning the battered child syndrome as was offered in this case is properly admitted into evidence. (Citations omitted)."

As for courts which have considered the "battered wife syndrome" or "battered woman syndrome," opinions as to the syndrome have been held to be admissible. In State v. Baker, 424 A2d 171 (N.H. 1980), the defendant was charged with attempted first-degree murder of his wife, to which he pled not guilty by reason of insanity. Both the defendant's wife and his daughter testified that the defendant had physically abused them on numerous occasions. The defendant called two psychiatrists who testified that the defendant was, in their opinion, legally insane at the time of the crime. In rebuttal, the state called an expert on domestic violence who testified that research does not indicate that wife beating is caused by mental illness. The defendant's objection to this testimony was overruled, the jury found the defendant guilty, and on appeal the court held that testimony regarding the battered wife syndrome was admissible to rebut the defendant's evidence of insanity. See also Morrison v. Bradley, 622 P2d 81 (Colo. App. 1980); State v. Dozier, 255 SE2d 552, 555 (W.Va. 1979); and People v. Powell, 102 Misc. 2d 775, 424 NYS2d 626 (1980).[2]

---

[1] The purpose of admitting or excluding evidence being to aid the jury in its search for the truth of the case before it, we know of no reason why the rule here under consideration should be different in civil and criminal cases. See 11A EGL Evidence (Criminal) § 24 (1979).

[2] In People v. Powell, supra, the defendant sought to set aside her conviction based on newly discovered evidence as to the "battered woman syndrome." Although the

In Ibn-Tamas v. United States, 407 A2d 626 (D.C. 1979), the defendant was convicted of second-degree murder while armed. The evidence at trial showed that the defendant's marriage to the deceased was spotted by recurring physically violent episodes separated by periods of relative harmony. The defendant testified that on the morning of the shooting the deceased hit her in the head, dragged her upstairs, pulled out a suitcase and told her to get out of the house, and then hit her with his fist and a hair brush. She testified that she took these blows on her buttocks and thighs while trying to protect her abdomen because she was pregnant. Before he went downstairs, the deceased pointed a revolver at her and said "You're going out of here this morning one way or the other." According to the defendant's testimony, when the deceased returned to the bedroom he resumed the attack, pushing her toward the bureau where he had left the revolver. Thinking that he was going to grab the gun, she picked it up and fired a shot to scare him. The victim left the room but as the defendant and her daughter were leaving, the victim jumped out at them and the defendant shot the deceased twice in the abdomen. The deceased backed down the stairs and into a room. As the defendant passed that room, she saw her husband crouching with what she thought was a gun in his hand and she fired the fatal shot into his head. On appeal, the defendant contended the trial court had erred in excluding the testimony of Dr. Lenore Walker, a clinical psychologist, offered as a defense expert on the subject of "battered women." The defense had offered the expert's testimony for two purposes: to describe the phenomenon of "wife battering," and to give an opinion of whether defendant's personality and behavior corresponded to those of 110 battered women the expert had studied. The defense contended that this testimony was relevant because it would help the jury evaluate the credibility of defendant's contention that she had perceived herself in such imminent danger that she shot her husband in self-defense. To rebut the prosecutor's argument that the logical reaction of a battered woman would be to call the police or leave her husband, the expert testified out of the presence of the jury that typically victims of the battered woman syndrome believe that their husbands are capable of killing them, that there is no escape, and that if they leave they will be found and hurt even more. Because there are periods of harmony, battered women tend to believe their husbands are basically loving, caring men, that they themselves are

court found that such evidence did not satisfy the requirements for newly discovered evidence, the court did not deny the motion on the basis that such evidence would have been inadmissible at trial.

somehow responsible for their husbands' violent behavior, and that they are low in self-esteem and feel powerless. The court (one judge dissenting) found that it was error to have excluded the expert's testimony because it would have supplied an interpretation of the facts which differed from the ordinary lay perception advocated by the prosecution and hence satisfied the requirement that to be admissible the opinion of the expert must be one that laymen could not draw; i.e., it was "beyond the ken of the average layman." (The case was remanded for further consideration of the expert's qualifications.)

So far as we have been able to ascertain, the courts which have considered the question have found that expert opinion as to the battered woman syndrome is admissible to assist the jury in evaluating the battered woman's defense of self-defense.[3]

We hold that the correct rule is as follows: Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. *Metropolitan Life Ins. Co. v. Saul; King v. Browning; Stewart v. State,* supra; accord, *Jones v. State,* supra. See also Code Ann. §§ 38-1708, 38-1710. This holding is in accord with the modern view as exemplified by Rules 702, 704 of the Federal Rules of Evidence, supra.

The trial court in this case applied this rule but found that the jurors could draw their own conclusions as to whether the defendant acted in fear of her life. We disagree and find that the expert's testimony explaining why a person suffering from battered woman's syndrome would not leave her mate, would not inform police or friends, and would fear increased aggression against herself, would be such conclusions that jurors could not ordinarily draw for themselves. Hence we find that the expert's opinion in this case was improperly excluded from the jury's consideration. It thus becomes

---

[3] In State v. Griffiths, 101 Idaho 163 (610 P2d 522) (1980), relied upon by the Court of Appeals in this case, the defendant's psychiatrist was not permitted to express an opinion as to whether or not the defendant was in a state of fear at the time of shooting her husband. There, however, the defendant testified as to only one prior occasion of physical abuse. The appellate court found that fear is a common human emotion within the understanding of a jury and hence the expert psychiatric explanation was not necessary. The other case relied upon by the Court of Appeals, State v. Matthews, 221 NW2d 563 (Minn. 1974), did not involve a battered woman and the court simply held that the trial court did not err in refusing to allow a clinical psychologist to state his opinion as to whether the defendant was motivated by fear when he shot and killed the victim.

unnecessary to consider whether the expert's report should have been considered by the trial court in fixing sentence.

*Judgment reversed. All the Justices concur, except Jordan, C. J., who concurs in the judgment only and Smith, J., disqualified.*

DECIDED MAY 13, 1981 —
REHEARING DENIED MAY 26, 1981.

*Donald J. Stein,* for appellant.
*Lewis R. Slaton, District Attorney, Margaret V. Lines, Assistant District Attorney,* for appellee.