**UNITED STATES of America**

v.

**Mary TAYLOR, Defendant.**

**No. 92 Cr. 322 (CSH).**

United States District Court,
S.D. New York.

May 3, 1993.

Opinion Denying Reconsideration
May 26, 1993.

---

Roger S. Hayes, U.S. Atty. for S.D.N.Y., New York City, for Government.

Jonathan N. Halpern, Asst. U.S. Atty., Jo Ann Harris, New York City, for defendant Mary Taylor.

## MEMORANDUM OPINION

HAIGHT, District Judge:

This Opinion addresses defendant's proffer of factual and expert opinion testimony with respect to a condition known as the "battered woman's syndrome." The government resists the introduction of such evidence at trial. The issues were discussed in defendant's memorandum dated April 7, 1993; at a hearing held before the Court on that date to consider the matter *in limine;* and in a further exchange of correspondence between counsel.

### Background

Defendant Taylor is charged in four counts of the indictment with conspiracy and substantive counts of bribery arising out of her service as a supervisory employee in the New York State Department of Motor Vehi-

cles ("DMV"), stationed at that agency's district office in the Bronx. The indictment charged two other employees of the Bronx office with Taylor: Roy Slusher and Jean Gilliam. Gilliam pled guilty prior to trial. The trial of Taylor and Slusher was scheduled to begin on April 12, 1993. On that date, counsel for Taylor advised the Court that her physicians had recommended that she be admitted to a hospital because of cardiac problems. Because of the uncertainty surrounding Taylor's medical condition, I severed the trials of Taylor and Slusher and began jury selection on the trial of Slusher on April 13. On April 21, during the presentation of the government's case-in-chief, Slusher pled guilty to the conspiracy count and the three substantive counts of the indictment in which he was charged. These are the same counts in which Taylor is charged.

At a hearing on April 27, 1993, counsel for Taylor informed the Court that Taylor's physicians deemed her fit to stand trial. A July 6, 1993 trial date has been set. Pending before this Court is defendant Taylor's motion *in limine* for a ruling on the admissibility of certain factual and expert testimony concerning "battered woman's syndrome". To understand the context in which Taylor's proffer of testimony arises, it is useful to review the evidence the government intends to offer against Taylor.[1]

The Bronx office of the Department of Motor Vehicles played a prominent part in an on-going investigation into corruption directed by the Auto Crimes Division of the New York Police Department ("NYPD"), with the assistance of several Federal agencies. A time came when a target of the investigation, being surveilled by NYPD officers, led them to an apparently incriminating encounter between the target and Roy Slusher. That encounter took place at a site in the Bronx where Slusher and other DMV employees were administering driver's road tests.

Several months after that encounter, the investigating officers arrested the target individual. The target then agreed to cooperate with the NYPD as a confidential infor-

---

1. Presiding over the abbreviated Slusher trial gave the Court a preview of the evidence that the government is likely to offer against co-defendant Taylor.

mant ("CI"), and continued his contacts with Slusher. The scheme uncovered involved trafficking in fraudulent DMV documents. Specifically, Slusher would process applications for driver's licenses which made it appear that the applicant had taken and passed the required road test, whereas in fact no road test had been given.

While the trial evidence indicated that at the pertinent times Slusher resided in Yonkers, he also maintained an apartment on Fenton Avenue in the Bronx. The confidential informant, under NYPD direction, conducted much of his illicit business with Slusher in the Fenton Avenue apartment. At those meetings, the CI wore a transmitter which looked like an ordinary beeper, and enabled the police officers, situated nearby in a highly sophisticated surveillance van, to "monitor" (that is, listen to) and record conversations taking place in the apartment. They did so, according to the police evidence, on over 20 occasions before Slusher was arrested and a search warrant executed at the Fenton Avenue address.

The government's case against Mary Taylor is that she, as Slusher's supervisor, was also involved in the conspiracy and the substantive offenses. The conversations recorded in the Fenton Avenue apartment reveal that Taylor was present on a number of occasions, and participated in those conversations in a manner which the government contends is incriminating as to her. The search of the Fenton Avenue apartment unearthed a number of DMV forms and documents which Slusher had no legitimate reason for maintaining at his home. In addition, counsel stated during the *in limine* hearings on this issue that Slusher and Taylor maintained a joint bank account somewhere in the Bronx, although evidence of that arrangement had not been adduced at the Slusher trial before Slusher pled guilty.

It is in these circumstances that defendant Taylor wishes to offer factual and expert opinion evidence on what has come to be known as the "battered woman's syndrome". Specifically, counsel for Taylor sets forth two reasons why the proffered testimony should be received.

The defense wishes to show "the physical and emotional abuse, humiliation and degradation suffered by Mary Taylor at home," in order to provide the jury "with an understanding of a different and innocent explanation for her presence in this apartment with Roy Slusher." Counsel further argues that "evidence of the pain she suffered at home will also tend to explain conduct by Mary Taylor that the government claims is evidence of guilt", such as maintenance of the joint bank account with Slusher. Counsel continues:

> Fundamental fairness and the constitutional guarantees of due process require that Mary Taylor be able to present evidence which casts an entirely different light on the apparent closeness between Mary Taylor and Roy Slusher. Further, it is not enough to simply elicit that Mary Taylor and Roy Slusher were close. To avoid the prejudice arising from her relationship with a man not her husband, the defense must adduce the extent of the pain that drove her to the relationship, and the apartment, and the comfort both represented in a very troubled life.

*Id.* at 2.

In addition to explaining certain aspects of Taylor's conduct, the defense has also suggested in the *in limine* hearings that the battered woman's syndrome may be relevant to assessing Taylor's credibility. Specifically, the defense has in mind the arguably incriminating participation by Taylor in the recorded conversations with Slusher and the CI at the Fenton Avenue apartment. If Taylor takes the stand in her own defense, she may expect to be confronted with those recordings by the government. Taylor has apparently advised her attorney that she simply does not remember such conversations. Counsel expresses understandable concern about the effect of that disclaimer on defendant's credibility; counsel proposes to elicit an explanation for the defendant's failure of memory through factual and expert opinion testimony concerning the battered woman's syndrome.

The defense proposes to call an expert witness to explain to the jury the syndrome and the effect it may have upon the conduct

and memory of the victim. Of course, an expert witness cannot testify in a factual vacuum; presumably the defense intends to elicit, either from the defendant herself or perhaps from other family members, testimony concerning specific instances in which she was abused, physically and emotionally, by her husband.

The government resists the proffered factual and opinion testimony, on the ground that it is not relevant to the issues under Rule 401, Fed.R.Evid., or alternatively that any relevance is "substantially outweighed by the danger of unfair prejudice" to the government under Rule 403.

Before considering the admissibility of the proffered evidence, it is useful to emphasize what defendant is *not* claiming. First, defendant has specifically disclaimed reliance upon Rule 12.2(b), Fed.R.Crim.P., as a basis for admissibility. Rule 12.2(b) refers to the introduction by the defense of "expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt ..." The rule requires a defendant asserting such defense to give particularized notice. Defendant at bar has not done so because she is not invoking that Rule. Secondly, defendant has explicitly disclaimed any defense based upon duress.

### Discussion

■ I begin with the observation that the battered woman's syndrome is sufficiently recognized by the present state of scientific knowledge to permit the admission of expert opinion testimony on the subject under Rule 702, Fed.R.Evid. *See Arcoren v. United States,* 929 F.2d 1235, 1241 (8th Cir.1991); *Fennell v. Goolsby,* 630 F.Supp. 451, 456–59 (E.D.Pa.1985); *State v. Hennum,* 441 N.W.2d 793 (Minn.1989); *Smith v. State,* 247 Ga. 612, 277 S.E.2d 678 (1981). These cases contain compendious citations of authority from Federal and State jurisdictions.

■ In the case at bar, the government does not contest the reliability or the general admissibility of battered woman's syndrome evidence. Its objections are directed at the broader considerations of relevance to the issues under Rule 401, and the obligation imposed on the trial court by Rule 403 to balance probative value against prejudicial effect.

Under Rule 401, evidence to be relevant must "relate to a fact that is of consequence to the determination of the action ..." This criminal action will determine whether or not Taylor conspired to defraud the Department of Motor Vehicles and in fact did so. Whether or not she suffered at the time from spousal abuse seems at first blush to be far removed from the determination of those particular issues, particularly given Taylor's disclaimer of defenses based upon Rule 12.2 or the concept of duress.[2]

Furthermore, to the extent that the proffered evidence, factual and opinion, is at all relevant to the issues before the jury, the danger of unfair prejudice to the government arising out of the jury's natural tendency to sympathize with Taylor as a battered woman (thereby perhaps prompting the jury to refrain from punishing her further by its verdict) is manifest. Accordingly Rule 403 is squarely implicated.

I must, to the maximum degree possible, accommodate the legitimate concerns of both the government and the defendant. In the case at bar, some of defendant's concerns may be alleviated by certain limitations on the proof.

For example, defendant expresses a concern that the government's proof "will show that this married woman" was sharing an apartment (and a relationship) "with a man not her husband ...", a fact that may prejudice defendant in the eyes of the jury. However, the jury need not be told that Taylor is married. I will preclude the government from proving that fact or alluding to it during opening statement or closing argument. Accordingly all the jury will know is that Taylor was sharing an apartment and a bank account with a man whose last name was different from hers. In these enlightened times,

---

**2.** The issues in the case at bar distinguish it from cases such as *Fennell, Hennum* and *Smith,* where victimized women killed their abusers and pled the syndrome as a defense to the criminal charges against them.

that is not a circumstance so prejudicial to defendant as to justify admission evidence that she was battered at home.

I appreciate that Taylor may wish to offer at trial a reason for her presence at the Fenton Avenue apartment unrelated to participation in a criminal conspiracy. She may do that by testifying that she had a close, loving, and supportive relationship with Slusher which meant a great deal to her, without revealing the genesis of that relationship, or its contrast with abusive conditions at home. While Taylor argues in her brief that "it is not enough to simply elicit that Mary Taylor and Roy Slusher were close" because that proof fails to "avoid the prejudice arising from her relationship with a man not her husband," the better way to avoid that prejudice is to preclude the government from proving Taylor's marital state.[3]

The government is entitled to prove the facts of a shared apartment and bank account unless they unfairly prejudice Taylor. If the jury does not know that Taylor is married to another man, the unfair prejudice to defendant is stripped away, eliminating the need to admit evidence unfairly prejudicial to the government. See Fed.R.Evid. 403.

Thus far I have dealt with defendant's expressed concern with respect to possible prejudice arising out of her conduct. The second basis for admitting the proffered testimony relates to the conversations recorded in the Fenton Avenue apartment and Taylor's credibility as a witness. As noted, Taylor is apparently prepared to deny any recollection of those recorded conversations. Although defendant's proffer of proof is unaccompanied by any written opinion from a qualified expert, I will assume for the sake of this discussion that an expert is prepared to give an opinion that the battered woman's syndrome can explain that particular loss of memory.

As illustrated by the Arcoren case, the battered woman syndrome may, in appropriate circumstances, be offered to counter attacks upon a witness's credibility. The de-

fendant in Arcoren, a resident of a federal Indian reservation, was convicted by a jury of aggravated sexual abuse, abusive sexual contact, and sexual abuse of a minor. The defendant's wife, who was one of the assault victims, testified before the grand jury three days after the events, and described in detail defendant's sexual and physical assaults upon both herself and a girl of minor years. Testifying several months later at trial, the defendant's wife recanted her grand jury testimony and denied that her husband had assaulted her. When the government confronted defendant's wife with her contradictory grand jury testimony, she said that she could not remember making the statements or that, where she did recall making them, they were incorrect. She testified that she accused her husband before the grand jury because she was angry with him for being with another woman and not because he raped her.

The court permitted the government to call an expert witness to testify about battered woman's syndrome. The expert's testimony tended to explain the discrepancy in the wife's grand jury and trial accounts. Following his conviction, Arcoren appealed on the ground that this opinion testimony should not have been received. The Eighth Circuit affirmed the conviction, reasoning that the expert's testimony "provided the jury with a basis upon which to understand and evaluate the changes in [the witness'] testimony." 929 F.2d at 1241.

To some extent, Arcoren and the other battered woman's syndrome cases cited supra, are distinguishable from the case at bar. In most cases where such testimony is offered, the victim turns on her abuser, and the battered woman's syndrome is offered as a defense to criminal charges. In Arcoren, testimony of the syndrome was essential for the government to explain away the victim's recantation, since it lay at the heart of Arcoren's defense to the charges of sexual abuse against him.

---

**3.** Should the government, notwithstanding this opinion and order, advert at trial to Taylor's marital state, then defendant can argue that the government opened the door to battered woman's syndrome proof. Of course, Taylor could not open that door by offering proof herself that she was married to an individual other than Slusher.

In the case at bar, Taylor's proffered testimony—that she does not presently recall the recorded Fenton Avenue apartment conversations—does not relate to whether or not the criminal activity actually occurred, or any legal justification for it. It merely explains why she does not remember the conversations.

However, like the *Arcoren* court, I am faced with a witness whose credibility may be attacked for memory loss which may be explained by an expert on the battered woman's syndrome. Accordingly, I think it would be fair to receive battered woman's syndrome in the case at bar if the government attacks Taylor's credibility on that one issue, namely, her anticipated testimony that she could not recall the recorded conversations.

I note that the government may avoid that problem by refraining from attacking Taylor's credibility on that particular point. The government need not do so, in order to derive a legitimate advantage from whatever is incriminating about Taylor's participation in these conversations. The government could, on cross-examination of Taylor, ask in substance: "Ms. Taylor, you have testified that you do not presently recall the conversations which were recorded and played to the jury. Are you denying that those conversations took place as recorded?" Taylor will presumably respond "no", since her counsel has represented that Taylor does not deny that it is her voice that was recorded. And if Taylor does not deny that the conversations occurred (including her recorded participation in them), the government has the benefit of that evidence, and may argue its probative effect to the jury. Given the evidence available to the government in this case, it does not need to attack Taylor's credibility on the peripheral question of whether she has a present recollection of the past recorded conversations. And if the government does not attack Taylor's credibility on that particular point, the battered woman's syndrome has no explanatory office to perform.

In short, if Taylor testifies as expected, and the government limits its cross-examination on this particular point in the manner suggested, I will not receive either factual or expert opinion testimony relating to the battered woman's syndrome.

These rulings will govern the conduct of the trial.

## MEMORANDUM OPINION ON RECONSIDERATION

Defendant Mary Taylor moves by letter brief for reconsideration of the Court's Memorandum Opinion and Order dated May 3, 1993 resolving evidentiary issues arising out of defendant's proffer of factual and expert opinion testimony relating to the battered woman's syndrome. Having considered the letters of counsel, I adhere to the prior decision.

Defendant's counsel argues in support of reconsideration that "there simply is no way to compromise a fundamental right of a defendant to take the witness stand and to attempt to present herself in a light most credible to the jury." But there is no right, fundamental or otherwise, of a defendant to take the stand and place before the jury facts which do not address the government's charges, while at the same time working obvious prejudice upon the government under Rule 403. Throughout these proceedings, defendant has refused to acknowledge or come to grips with Rule 403 considerations. That failure blights defendant's motion for reconsideration, which I deny in its entirety.

Motion for reconsideration denied.

So Ordered.