## S96A0236. CHESTER v. THE STATE.
### (471 SE2d 836)

CARLEY, Justice.

In an unprovoked attack, Anthony Chester fatally shot his girl friend. He fled the scene, but surrendered to police within an hour of the homicide and gave a statement wherein he admitted firing the fatal shots. He was tried before a jury and found guilty of malice murder, possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon. For the murder, he was sentenced to life and, for the two possession of a firearm offenses, he was given consecutive five-year sentences. He appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.[1]

1. The evidence is sufficient to authorize a rational trier of fact to find proof of Chester's guilt of the murder and the two possession of a firearm offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Although Chester introduced expert opinion testimony that he suffered from the battered person syndrome, the following requested charges were not given by the trial court:

> Expert testimony regarding the battered person syndrome authorizes a jury to find that, notwithstanding any lapse in

---

[1] The crimes were committed on August 6, 1993 and Chester was indicted on August 11, 1993. The guilty verdicts were returned on April 1, 1994 and, on that same date, the judgments of conviction and sentences were entered. The motion for new trial was filed on April 29, 1994 and, on August 30, 1995, that motion was denied and the notice of appeal was filed. The case was docketed in this Court on November 7, 1995 and was orally argued on February 23, 1996.

time since the mate's *last assault*, Mr. Chester honestly was trying to defend himself although his mate was not at the moment *physically attacking him*. . . . You may consider the testimony of an expert witness on the battered person syndrome to help explain why a person suffering the battered man syndrome would not leave his mate, would not inform the police or friends, and would fear *increased aggression* against himself.

(Emphasis supplied.) Urging that the syndrome was his sole defense, Chester enumerates as error the refusal to give these requested charges.

In this state, the battered person syndrome is not a separate defense and expert testimony as to that syndrome is admissible only to assist the jury in evaluating a defendant's claim of self-defense. *Pugh v. State*, 260 Ga. 874, 876 (3) (401 SE2d 270) (1991); *Chapman v. State*, 259 Ga. 706, 707 (4) (386 SE2d 129) (1989); *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). Nothing whatsoever in OCGA § 16-3-21 or in the Suggested Pattern Jury Instructions regarding the defense of justification authorizes the use of deadly force to defend against the mere verbal *threat* of physical force. OCGA § 16-3-21 (a) provides, in relevant part, that the use of force which is intended or likely to cause death or great bodily harm is authorized only if one "reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person. . . ." It has long been the law of this state that mere verbal threats, unaccompanied by any physical menaces, will not authorize the use of such deadly force as to justify a homicide. *Davenport v. State*, 245 Ga. 845, 846 (1) (268 SE2d 337) (1980); *Moore v. State*, 228 Ga. 662, 663 (1) (187 SE2d 277) (1972).

It can not be the law that mere verbal threats alone will justify a homicide. To maintain such a doctrine would be absurd. . . . [T]here must be something more than mere threats; there "must be an appearance of imminent danger;" the "means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently."

*Taylor v. State*, 121 Ga. 348, 355 (9) (49 SE 303) (1904). "[M]ental anguish does not constitute 'great bodily harm'; therefore, its alleged infliction does not justify killing the inflictor." *Chancellor v. State*, 165 Ga. App. 365, 366 (2) (301 SE2d 294) (1983).

Since the battered person syndrome is *not* a separate defense and expert testimony as to that syndrome is admissible *only* to assist

the jury in evaluating a defendant's claim of self-defense, it must necessarily follow that, when a defendant relies upon the battered person syndrome to justify his use of deadly force against a homicide victim, he must show that he previously was subjected to acts of actual or attempted violence committed by the victim. *Pugh v. State*, supra at 874 (defendant "had been severely abused throughout the seven years of her marriage to the victim"); *Chapman v. State*, supra at 706 ("[d]uring the courtship and their marriage, the deceased would frequently beat" the defendant); *Chapman v. State*, 258 Ga. 214, 215 (2) (367 SE2d 541) (1988) ("the defendant testified that she shot the victim in self-defense after numerous beatings"); *Smith v. State*, supra at 613 (victim "had beaten [the defendant] periodically"). If mere *contemporaneous* verbal threats, standing alone, cannot authorize reliance by a non-battered person upon the justification defense to a murder charge, then certainly mere *previous* verbal threats, standing alone, likewise cannot authorize reliance upon the battered person syndrome in a murder case. In a murder case, the sole purpose of battered syndrome evidence is to show that, although the "imminent" danger element of a justification defense may not have been present at the time the fatal blow was struck, that element nevertheless had been present in the past.

> [E]vidence of the syndrome is admissible in an attempt to show that the defendant had a mental state necessary for the defense of justification although the actual threat of harm does not immediately precede the homicide.

*Chapman v. State*, supra at 708 (4). If the "imminent" danger element did not exist in the past, then there can be no present justification for the homicide. Scientific research and study may show that threats and emotional abuse can substitute for physical abuse as a factor in the creation of the battered person syndrome. However, scientific research and study cannot change this state's long-standing law of justification so as to authorize one against whom only verbal threats were made to evade criminal culpability for the homicide of the one who verbally threatened him. Justification is a legal, not a scientific, concept and to maintain such a doctrine of that concept in this state is no less absurd today than it was when *Taylor v. State*, supra, was decided almost 100 years ago.

Although the evidence shows that the victim previously made verbal threats to Chester, there is no evidence that she ever had committed any act of actual or attempted violence against him. It follows that, although an expert witness opined that Chester suffered from the battered person syndrome as the result of the victim's mere verbal threats, there was no evidence that Chester was in fact a battered

person who could claim self-defense as against the murder victim. Therefore, the battered person syndrome was not relevant to Chester's claim of self-defense and his refused requests to charge were not adjusted to the evidence. There was no "last assault" by the victim, she never had committed any prior act of "physically attacking" Chester and he could not reasonably have feared "increased aggression" since he had not been the victim of any past aggression. It is never error to refuse to charge on an issue which is not adjusted to the evidence. *Bland v. State*, 210 Ga. 100, 107 (8) (78 SE2d 51) (1953).

Moreover, even assuming that the battered person syndrome had been relevant to Chester's claim of self-defense, a trial court's charge "should contain no such summary of the evidence as might to a jury either seem to be an argument or amount to the expression or intimation of an opinion thereon." *Thomas v. State*, 95 Ga. 484, 485 (3) (22 SE 315) (1895). Accordingly, a trial court is not required, "even after request, to specifically point out particular evidence in behalf of the defendants which the jury should specially consider." *Balark v. State*, 81 Ga. App. 649, 654 (1) (c) (59 SE2d 524) (1950). Chester's requests "are more adjusted to the exhortation of counsel than to the impartial clarity which should characterize the instructions of the court," and this argumentativeness "is sufficient reason for their refusal." *Balark v. State*, supra at 654 (1) (c). It follows that it was not error to refuse to give the requested charges. See *Pugh v. State*, supra at 876 (3).

3. Over objection, the State's expert witness was allowed to remain in the courtroom during the testimony of Chester's expert witness and Chester urges that it was error to allow this witness to testify after he violated the rule of sequestration. However, even assuming, without deciding, that the rule was violated by the witness, it was not reversible error to allow him to testify, since a violation of the rule of sequestration goes only to the credibility, rather than the admissibility, of the violating witness' testimony. *Johnson v. State*, 258 Ga. 856, 857 (4) (376 SE2d 356) (1989). Compare *Childress v. State*, 266 Ga. 425 (467 SE2d 865) (1996) (rule of sequestration violated by actions of witness outside of the courtroom).

4. Chester urges that it was error to allow the State's expert to give testimony regarding the battered person syndrome, since he was not shown to be an expert as to that specific syndrome. However, the record shows that, by virtue of his training and expertise, the State's witness was eminently qualified as an expert in the general field of forensic psychology. That, as the result of his general expertise, the State's witness had little regard for the viability of the battered person syndrome in specific would not disqualify him from testifying as to his opinion concerning whether Chester suffered therefrom. See

*Taylor v. State*, 261 Ga. 287, 289 (1) (a) (404 SE2d 255) (1991).

*Judgments affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., Sears and Hunstein, JJ., who concur specially.*

BENHAM, Chief Justice, concurring specially.

While I agree with the holdings of Divisions 1, 3, and 4 of the majority opinion and join the majority's judgment of affirmance, I write separately because I believe that the enumeration of error addressed in Division 2 (the failure of the trial court to give jury instructions requested by the defendant) can be affirmed under existing law without the necessity of narrowing the circumstances in which a defendant may rely on the battered person syndrome.

Citing the legal determination that battered person syndrome is not a discrete defense but serves only as evidence supporting the defendant's claim that he/she was justified in using force against the victim, this Court has repeatedly rejected defendants' assertions that the trial court erred by failing to give requested jury charges on the battered person syndrome. See *Smith v. State*, 265 Ga. 495 (2) (458 SE2d 347) (1995); *Pugh v. State*, 260 Ga. 874 (401 SE2d 270) (1991); *Chapman v. State*, 259 Ga. 706 (4) (386 SE2d 129) (1989); *Chapman v. State*, 258 Ga. 214, 216 (367 SE2d 541) (1988). See also *Motes v. State*, 192 Ga. App. 302, 305 (384 SE2d 463) (1989) (written by Chief Judge, now Justice, Carley). In *Pugh*, supra, the defendant requested a charge which, like the charge requested by appellant, consisted of quoted language from this Court's opinion in *Chapman*, supra, 258 Ga. at 216. This Court affirmed the trial court's refusal to give the requested charge, and we again today affirm a trial court's refusal to give the requested charge because a separate charge on the syndrome is not authorized.

Expert testimony concerning the syndrome is admissible because the subject is complex (*Sinns v. State*, 248 Ga. 385 (3) (283 SE2d 479) (1981)), and the testimony supplies an interpretation of the facts which differs from the ordinary lay perception, which questions why victims of the syndrome do not leave an abusive person or seek help, by showing that the syndrome's victims believe they are responsible for causing the abusive behavior, have low self-esteem, and are powerless. *Smith v. State*, supra, 247 Ga. at 618-619. Testimony concerning the syndrome is relevant to show that the defendant had the mental state necessary for a justification defense, i.e., that he/she reasonably believed force was necessary to prevent the victim's imminent use of force against the defendant. *Chapman*, 259 Ga. 706 (4), supra. See also *Sanders v. State*, 251 Ga. 70, 74 (303 SE2d 13) (1983), where this Court noted that testimony concerning the syndrome was appropriate in certain cases as evidence of whether the defendant acted in fear of his/her life. The testimony

14

also is relevant to the issue of the reasonableness of the defendant's fears concerning the threat the alleged abuser posed. See *Cox v. State*, 216 Ga. App. 86 (453 SE2d 471) (1995) (Pope, C. J., concurring specially). Testimony of the syndrome seeks to explain to the jury that the defendant reasonably believed he/she was in imminent danger even though no threat of harm immediately preceded the defendant's act against the abuser. *Chapman*, supra, 259 Ga. at 708. Thus, a complete charge on justification, coupled with a closing argument which sets out for the jury how the defendant personifies the syndrome and thus was justified in taking the action which forms the basis of the charge against him/her, is sufficient. The trial court did not err when it refused to give additional charges which, "in essence, argumentatively emphasized such evidence as may have supported appellant's theory that [he] had acted in self-defense." *Motes v. State*, supra, 192 Ga. App. at 305.

Thus, the decision of the trial court on this issue can be affirmed without narrowing the scope of the admissibility of battered-person-syndrome evidence. This Court has stated again and again that battered-person-syndrome evidence is admissible to support the theory that the defendant was justified in taking the action he/she did. Since one is justified in using force to prevent the *threat* of physical force against one (OCGA § 16-3-21; Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 43, § AA (1991)), a defendant who asserts that he or she was the target of threats of physical violence should have the benefit of using battered-person-syndrome evidence.

I am authorized to state that Justice Hunstein joins in this special concurrence.

SEARS, Justice, concurring specially.

Because the trial court in this case did not err by refusing to give Chester's requested charge on the battered person syndrome, as there was not sufficient evidence presented by Chester to warrant such a charge, I concur in the result of the majority opinion. However, I am concerned that the majority opinion could be misconstrued to mean that the defense of battered person syndrome is merely a form of the defense of justification, and that when the syndrome is properly asserted as a defense, a standard jury charge on justification will suffice. Because our prior case law establishes that the battered person syndrome is not subsumed entirely within the defense of justification, it follows that a standard jury charge on justification should not suffice when the syndrome is properly asserted as a defense.

1. The majority opinion states that "the battered person syndrome is not a separate defense, and . . . is admissible only to assist

the jury in evaluating a defendant's claim of self defense."[2] The majority then goes on to rule that because there was no evidence of battering in this case, the battered person syndrome was irrelevant to Chester's claim of self-defense. The majority's treatment of the battered person syndrome defense indicates an underlying assumption that the syndrome is subsumed entirely within the defense of justification, and that a standard jury charge on justification would be sufficient when a battered person defense is properly asserted. However, that assumption is not altogether supported by the case law the majority relies upon.

The majority's reliance upon *Chapman v. State*, an earlier opinion of this Court, is entirely accurate insofar as the defenses of battered person syndrome and justification both require a defendant's reasonable belief that the threat or use of force was necessary in order to defend against the use of unlawful force.[3] However, *Chapman* also indicates that the battered person syndrome cannot be subsumed entirely within the defense of justification. Rather, *Chapman* establishes that the battered person syndrome has at least one essential element that is entirely contradictory to an essential element of a standard justification defense:

> [E]vidence of the [battered person] syndrome is admissible in an attempt to show that the defendant had a mental state necessary for the defense of justification, *although the actual threat of harm does not immediately precede the homicide.*

(Emphasis supplied.)[4]

In contrast, the defense of justification requires that a defendant who uses force against another must reasonably believe that such force "is necessary to defend himself . . . against such other's *imminent use* of unlawful force." (Emphasis supplied.)[5] Under a justification defense, the use of deadly force is not justifiable unless the defendant reasonably believes that it is necessary to protect herself against *imminent* death or *imminent* serious bodily harm.

Thus, under Georgia law, the defenses of justification and bat-

---

[2] Opinion at 10 citing *Pugh v. State*, 260 Ga. 874, 876 (401 SE2d 270) (1991); *Chapman v. State*, 259 Ga. 706, 707 (386 SE2d 129) (1989).

[3] See 259 Ga. at 707-708; 192 Ga. App. at 305. In this regard, as well explained in Justice Hunstein's persuasive special concurrence, I would not restrict application of the syndrome to incidents of actual or attempted battery perpetrated against an abused individual.

[4] 259 Ga. at 708.

[5] OCGA § 16-3-21 (a); see Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 43, § AA (1991). For purposes of this special concurrence, "imminence" is understood to mean "ready to take place" or "impending," see Webster's Third New International Dictionary at 1130 (1961), and thus is synonymous with "immediate."

tered person syndrome have at least one essential difference — the former applies where the threat or use of unlawful force is imminent, and the latter does not require that there be an imminent use or threat of force. It follows that a standard charge on justification cannot adequately permit a jury to consider a properly asserted defense of battered person syndrome, because such a charge incorrectly instructs that "imminence" is an element of the syndrome.[6]

There are research studies and public policy reasons which support omitting the imminence requirement from the defense of battered person syndrome. For example, researchers report that the battered person syndrome frequently is characterized by several distinct and identifiable traits, including the psychological paralysis of the afflicted person and a firm belief that she is completely powerless to escape the violence perpetuated against her.[7] Such a person may feel so hopelessly trapped that the only means of possible escape she can discern is to target the source of her misery — the batterer. Over time and after repeated and severe incidents of abuse interspersed with relatively peaceful lapses, it is possible that the victim may become unable to predict when the abuse will resume, and she may experience a change in cognitive thinking ability, in which she may reexperience past incidents of abuse and believe that they are recurring again.[8] When that happens, the abused victim may believe that the use of deadly force against her is "imminent," regardless of whether that may be accurate in the legal sense, and she may go into a dissociative state and take what she sees as necessary lifesaving action.[9] It is incomprehensible to me to permit such severely abused individuals existing in such a deeply troubled state of mind to justifiably use defensive force only when the use or threat of unlawful force against them is in fact "imminent."

Of course, there is a solution to this concern that will accommodate the particularities of the battered person syndrome while remaining entirely consistent with our case law regarding the justification defense. As was recognized by the *Chapman* court, evidence that a defendant suffers from battered person syndrome may be sufficient to establish the defense of justification. In such instances, the

---

[6] In this regard, see *Pugh v. State*, supra; *Motes v. State*, 192 Ga. App. 302, 304 (384 SE2d 463) (1989), both of which provide, I believe incorrectly, that a standard jury charge on justification is sufficient to encompass a properly asserted battered person syndrome defense.

[7] See Klis, Reforms to Criminal Defense Instructions: New Patterned Jury Instructions Which Account for the Experience of the Battered Woman Who Kills Her Battering Mate, 24 Golden Gate Univ. Law Rev. 131, 138-140 (1994).

[8] See Walker, Understanding Battered Woman Syndrome, Trial at 32 (Feb. 1995).

[9] Id. See also the discussion at p. 17, infra, regarding the need to particularize the "reasonable person" standard in battered person cases, and to remove it from a purely objective analysis.

threat or use of unlawful force need not be imminent, as is required with a standard justification defense.[10] As explained more fully below, I believe that we would do well in directing trial courts to instruct juries accordingly.

2. My second concern with the majority's treatment of the battered person syndrome stems from the fact that it could be construed to permit a jury charge on justification to suffice in cases where a battered person defense is properly asserted, when such a charge is based entirely upon a purely objective "reasonable person" standard.[11] As noted by other courts and commentators, the purely objective "reasonable person" standard does not permit juries to consider fully the defense of battered person syndrome.

Insofar as the objective "reasonable person" standard requires a jury to view the circumstances surrounding an accused at the time he uses defensive force from the standpoint of a hypothetical reasonable and prudent person, it simply cannot adequately contemplate the plight of a battered individual.[12] As discussed briefly above, the battered person syndrome is often characterized by numerous psychological features that in no way comport with the experiences and reactions of a reasonable and prudent person (even a hypothetical one). Moreover, it is manifestly unfair to hold a battered individual to the same standard as a typical reasonably prudent person, when at the time she uses defensive force, she may be existing in a dissociative state unsure of when the next attack upon her may begin and is unable to discern between her present and past realities. Consequently, I believe that in these cases, the "reasonable person" standard should be slightly modified in order to permit juries to consider the reasonableness of the defendant's belief that the use of force was necessary in light of both his circumstances at the time he used force, and any psychological condition resulting from such circumstances.

3. As noted, Chester failed to present evidence to support a jury charge on the battered person defense. Hence, I agree with the majority that the trial court did not abuse its discretion in refusing to give the requested charge in this case.

However, in future cases, I believe that trial courts faced with a properly asserted battered person defense would be well advised to instruct juries that evidence that a defendant suffers from battered

---

[10] See n. 4, supra, and accompanying text.

[11] See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 45, § AA (2) (b) (1) (1991) (identifying the standard for determining the reasonableness of a defendant's belief that the use of defensive force was necessary as "whether the circumstances were such that they would excite (not merely the fears of the defendant but) the fears of a *reasonable person*").

[12] See Klis, supra, n. 5 at 144-145; *State v. Leidholm*, 334 NW2d 811, 817-818 (N.D. 1983).

person syndrome may be sufficient to establish that the defendant is justified in threatening or using force to the extent that they reasonably believe that such threat or force is necessary to defend against a third person's use of unlawful force, and under such circumstances the third person's use of force need not be imminent. In determining the reasonableness of a battered defendant's belief that defensive force was necessary, I would suggest that trial courts instruct juries to consider whether the circumstances were such as would excite not merely the fears of the particular defendant, but also the fears of a reasonable person possessing the same or similar psychological and physical characteristics as the defendant, and faced with the same particular circumstances surrounding the defendant at the time he or she used defensive force.

HUNSTEIN, Justice, concurring specially.

I write specially because I cannot agree with the majority's attempt through dicta to chart the course of the justification defense in Georgia law for future cases. I thus concur only with the result reached by the majority for the reason set forth in the Chief Justice's special concurrence, namely, that the charge given by the trial court on justification was sufficient in this case.

At trial a witness whose education and experience qualified her as an expert on the subjects of battered person syndrome and post traumatic stress disorder was properly allowed to testify on behalf of the defense. In regard to the cycle of abuse that typifies the battered person syndrome, the expert testified that the "explosion" segment of the cycle may involve physical abuse or

> it may be an emotional or verbal kind of threatening explosion of what I'm going to do [to] you or what's going to happen to you. Sometimes the threats can be just as abusive as a physical thing. In fact, in the book that's coming out on emotional abuse, we're showing that the explosions can be only emotional abuse and that the threats can be devastating to a person exactly the same as if there was physical abuse along with it.

It appears, based on the testimony by Chester's expert, that research and study may be on the verge of showing that threats and emotional abuse can substitute for physical abuse as a factor in the creation of the psychological syndrome known currently as the battered person syndrome. Advancements in this area of science are not unexpected: the battered wife or battered woman syndrome discussed in *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981), is now the battered person syndrome, in recognition of the fact that men, as

well as women, can develop the syndrome. Perhaps the syndrome will soon be renamed, if it becomes established that assault victims as well as battery victims can develop the syndrome. Regardless of the nomenclature, the law of this State is and remains the rule set forth in *Smith v. State*, namely, that expert opinion testimony on relevant issues to be decided by the jury is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves. Id. at 619.[13]

In apparent response to this expert testimony (regarding which no enumeration of error is asserted) the majority deems it necessary to expound upon the law involving self-defense and threats, categorically stating that "scientific research and study cannot change this state's long-standing law of justification." Of course, scientific research and study *have* already changed this State's long-standing law of justification, as demonstrated by this Court's recognition of the battered person syndrome defense notwithstanding the fact that the deadly force employed by the defendant may not have been in response to "imminent" use of unlawful force by the victim. See *Smith v. State*, supra; see also Justice Sears' scholarly discussion of this subject in her special concurrence. Given the status of this case on appeal, the majority's language regarding threats and the justification defense can only be read as an attempt to forestall any future developments in the law that might result should scientific research establish that certain individuals exposed to an environment of threats and emotional abuse can develop the psychological syndrome known currently as the battered person syndrome. As modern scientific and technological advancements continue in an accelerated pace to reveal the mysteries of the human mind, it is hardly "absurd" to recognize that a 1904 case may not represent the ultimate and immutable statement of legal doctrine in an area of law intimately affected by those advancements. It behooves this Court "not to perpetuate error or to allow our reasoning or conscience to decay or to turn deaf ears to new light and new life." *Brown v. Ga.-Tenn. Coaches*, 88 Ga. App. 519, 533 (77 SE2d 24) (1953).

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this special concurrence.

---

[13] In adopting the "beyond the ken of the average layperson" test in *Smith v. State*, this Court recognized that it acted "in accord with the modern view as exemplified by Rules 702, 704 of the Federal Rules of Evidence." Id. at 619. See also *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993), in which the United States Supreme Court discarded the "general acceptance" test set forth in *Frye v. United States*, 293 F 1013 (DC Cir. 1923) on the ground that *Frye* had been supplanted by the Federal Rules of Evidence and specifically recognized that Rule 702, not the general acceptance test, provides the governing standard when a litigant offers expert scientific testimony. *Daubert*, supra, 125 LE2d at 479.

DECIDED MAY 6, 1996 —
RECONSIDERATION DENIED JULY 12, 1996.

*J. Jeffrey Lacy, Timothy L. Barton,* for appellant.
*Glenn Thomas, Jr.,* District Attorney, *Stephen D. Kelley,* Assistant District Attorney, *Michael J. Bowers,* Attorney General, *Caroline W. Donaldson,* Assistant Attorney General, for appellee.