473 S.E.2d 759 (1996)
267 Ga. 9
CHESTER
v.
The STATE.
No. S96A0236.
Supreme Court of Georgia.
May 6, 1996.
Reconsideration Denied July 12, 1996.
For majority opinion of the court, see 267 Ga. 9, 471 S.E.2d 836.
HUNSTEIN, Justice, concurring specially.
I write specially because I cannot agree with the majority's attempt through dicta to chart the course of the justification defense in Georgia law for future cases. I thus concur only with the result reached by the majority for the reason set forth in the Chief Justice's special concurrence, namely, that the charge given by the trial court on justification was sufficient in this case.
At trial a witness whose education and experience qualified her as an expert on the subjects of battered person syndrome and post traumatic stress disorder was properly allowed to testify on behalf of the defense. In regard to the cycle of abuse that typifies the battered person syndrome, the expert testified that the "explosion" segment of the cycle may involve physical abuse or
it may be an emotional or verbal kind of threatening explosion of what I'm going to do [to] you or what's going to happen to you. Sometimes the threats can be just as abusive as a physical thing. In fact, in the book that's coming out on emotional abuse, we're showing that the explosions can be only emotional abuse and that the threats can be devastating to a person exactly the same as if there was physical abuse along with it.
It appears, based on the testimony by Chester's expert, that research and study may be on the verge of showing that threats and emotional abuse can substitute for physical abuse as a factor in the creation of the psychological syndrome known currently as the battered person syndrome. Advancements in this area of science are not unexpected: the battered wife or battered woman syndrome discussed in Smith v. State, 247 Ga. 612, 277 S.E.2d 678 (1981), is now the battered person syndrome, in recognition of the fact that men, as well as women, can develop the syndrome. Perhaps the syndrome will soon be renamed, if it becomes established that assault victims as well as battery victims can develop the syndrome. Regardless of the nomenclature, the law of this State is and remains the rule set forth in Smith v. State, namely, that expert opinion testimony on relevant issues to be decided by the jury is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves. Id. at 619, 277 S.E.2d 678.[1]
In apparent response to this expert testimony (regarding which no enumeration of error is asserted) the majority deems it necessary to expound upon the law involving self-defense and threats, categorically stating that "scientific research and study cannot change this state's long-standing law of justification." Of course, scientific research and study have already changed this State's long-standing law of justification, as demonstrated by this Court's recognition of the battered person syndrome defense notwithstanding the fact that the deadly force employed by the defendant may not have been in response to "imminent" use of unlawful force by the victim. See Smith v. State, supra; see also Justice Sears' scholarly discussion of this subject in her special concurrence. Given the status of this case on appeal, the majority's language regarding threats and the justification defense can only be read as an attempt to forestall any future developments in *760 the law that might result should scientific research establish that certain individuals exposed to an environment of threats and emotional abuse can develop the psychological syndrome known currently as the battered person syndrome. As modern scientific and technological advancements continue in an accelerated pace to reveal the mysteries of the human mind, it is hardly "absurd" to recognize that a 1904 case may not represent the ultimate and immutable statement of legal doctrine in an area of law intimately affected by those advancements. It behooves this Court "not to perpetuate error or to allow our reasoning or conscience to decay or to turn deaf ears to new light and new life." Brown v. Ga.-Tenn. Coaches, Inc., 88 Ga.App. 519, 533, 77 S.E.2d 24 (1953).
I am authorized to state that Chief Justice BENHAM and Presiding Justice FLETCHER join in this special concurrence.
NOTES
[1] In adopting the "beyond the ken of the average layperson" test in Smith v. State, this Court recognized that it acted "in accord with the modern view as exemplified by Rules 702, 704 of the Federal Rules of Evidence." Id. at 619, 277 S.E.2d 678. See also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in which the United States Supreme Court discarded the "general acceptance" test set forth in Frye v. United States, 293 F. 1013 (D.C.Cir.1923) on the ground that Frye had been supplanted by the Federal Rules of Evidence and specifically recognized that Rule 702, not the general acceptance test, provides the governing standard when a litigant offers expert scientific testimony. Daubert, supra, 509 U.S. at 587-88, 113 S.Ct. at 2793-94, 125 L.Ed.2d at 479.